THE STATE v. DRAPER, APPELLANT.

1. **Murder**: INDICTMENT: UNCERTAINTY: REPUGNANCY. An indictment for murder, which charges that defendant stabbed the deceased upon the breast and upon the body, giving him four mortal wounds upon his breast and his belly, is not bad for repugnancy, and alleges the locality of the wounds with sufficient certainty.

2. **Dying Declarations.** On a trial for murder, dying declarations are properly received in evidence, when shown to have been made by the deceased after he had abandoned all hope of recovery, and in view of death then impending.

3. ———. Statements made by the deceased, are admissible in evidence as dying declarations, only so far as they relate to the killing, and the facts and circumstances attending it, and constituting a part of the res gestæ. So far as they relate to anterior occurrences tending to prove malice, they are inadmissible.

*Appeal from Greene Circuit Court.* — HON. W. F. GEIGER, Judge.

*John O'Day* for appellant.

1. The court erred in admitting in evidence the dying declaration of deceased to prove facts distinct from and prior to the homicide. "That some two or three weeks before the homicide, he, deceased, and Draper (defendant) had trouble about the trunk, and that they quarreled, and Draper then abused deceased and threatened deceased." Dying declarations must be restricted to the act of killing and the circumstances immediately attending the act, and forming a part of the res gestæ, and are not admissible to prove previous trouble or threats, or to show previous malice on part of the prisoner to the deceased. Dying declarations are only admissible when the death of the deceased is the subject of the charge, and the circumstances of the death the subject of the dying declarations; citing the following authorities in addition to those discussed in the opinion of the court: Wharton on Homicide (2d Ed.), Sec. 744; *Crookham v. State*, 5 West Va. 510; *State v. Medlicott*, 9 Kansas 257; 2d American Leading Crim. Cases 398;

*Starkey v. the People*, 17 Ill. 17 ; *Wilson v. Boerene*, 15 Johnson 286 ; *Daily v. N. Y. & N. H. R. R. Co.*, 32 Conn. 356 ; 1st Greenleaf Evidence (11th Ed.), Sec. 156 ; 1st Phillips Evidence (4th American Ed.) 287 ; *Rex v. Mead*, 2 Barn. & Cress. 605 ; *the King v. Lloyd*, 4 Car. & P., 233.

2.   The court erred in admitting in evidence any part of the so-called dying declarations of Gilbert.   Dying declarations are admissible only where the person making them is in *articulo mortis*, and in the full belief that he is about to die.   Such declarations shall not be received, unless the proof clearly shows that the deceased was in *articulo mortis*, and at the time of making them was fully conscious of that fact—not as a thing of surmise and conjecture or apprehension, but as a fixed and inevitable fact.   The evidence fails to show that deceased was in this condition at the time the so-called dying declarations were made by him.   Dying declarations should be admitted with scrupulous care.   *State v. Medlicott*, 9 Kansas 257 ; *Campbell v. State*, 11 Ga. 353 ; Woodcock's case, 2 Leach 563.

3.   The indictment is bad for repugnancy.   Stripped of its verbiage, it charges that defendant gave the deceased four mortal wounds, and that these four wounds were inflicted in and upon the breast of deceased, and also in and upon the belly of deceased.   If inflicted on the breast, then they were not inflicted upon the belly.   *State v. Jones*, 20 Mo. 58.

*J. L. Smith*, Attorney General, for the State.

1.   The indictment charges the wounds to have been inflicted "in and upon the breast of him, the said J. L. Gilbert, and in and upon the belly of him, the said J. L. Gilbert, etc."   This was describing the location of the wounds with sufficient accuracy.   *State v. Edmundson*, 64 Mo. 398.

2.   Carter and Newell, witnesses for the State, were asked whether they ever had any conversation with de-

ceased in regard to his condition. In answer, they stated that he said, on the evening before he died, that he "could not live till morning." Thereupon the witnesses detailed Gilbert's statement of the cutting. The evidence was properly admitted; the proper foundation had been laid; the deceased was in a dying condition at the time, and knew and believed that fact. The statements were made in *articulo mortis*. *McLean v. State*, 8 Mo. 153; *McMillen v. State*, 13 Mo. 30.

NORTON, J.—The defendant was indicted for murder in the first degree in the circuit court of Jasper county, at its September term, 1876, for the killing of one J. L. Gilbert. On defendant's application the venue of the cause was changed to the circuit court of Greene county. In this latter court defendant was put upon his trial, at its May term, 1877, which resulted in his conviction for murder in the first degree. Unsuccessful motions for a new trial and in arrest of judgment having been made, the cause is brought here for review on appeal.

The grounds relied upon for a reversal of the judgment are the insufficiency of the indictment, the refusal of the court to receive legal evidence, the reception of illegal evidence, giving improper and refusing proper instructions. It is objected that the indictment is insufficient, because it does not with certainty allege the locality of the wounds, or the part of the body on which they were inflicted. The allegations in the indictment are "that the said Draper, with a certain knife, &c., in, and upon the body of J. L. Gilbert, did, &c.; make an assault, and that he, the said Draper, with the said knife, so had and held as aforesaid, upon the said Gilbert, did then and there, &c., strike, cut and stab in and upon the breast of him, the said Gilbert, and in and upon the body of him, the said Gilbert, giving to him, the said Gilbert, in and upon the breast of him, the said Gilbert, and in and upon the belly of him, the said Gilbert, four mortal wounds, &c., of which said

mortal wounds the said Gilbert did then and there instant-
ly die."

It is argued that under the ruling of this court in the
case of the *State v. Jones*, 20 Mo. 58, the indictment is open
1. MURDER.     to the objection of repugnancy. The allega-
tions in the indictment in the case at bar are distinguish-
able from the charge in the indictment in that case, in this :
In that case the charge was that the defendant did strike
and thrust the deceased· in and upon the left side of the
belly, and in and upon the right shoulder, giving *one* mortal
wound of the breadth of three inches, and of the depth of
six inches. Judge Ryland says "now that indictment
avers the giving of but one mortal wound by the blows
and thrusts, and described as being given 'on the left
side ·of the belly, and also as being given on the right
shoulder,' and yet this wound is of the breadth of
three inches and the depth of six inches." It was a
physical impossibility for this wound to have been given
both on the right shoulder and the left side of the belly,
and, therefore, the charge was held repugnant. It is not
so in the case we are considering; here it is charged
that the defendant did cut and stab the deceased, in and
upon the breast, and in and upon the belly of the deceased in-
flicting four mortal wounds. Two of them may have been on
the breast and two of them on the belly, or one on the breast
and three on the belly, and there is consequently no such
repugnancy as is to be found in the case to which we have
been cited. The case of the *State v. Jones, supra*, was de-
cided upon the authority of *Dias v. State*, 7 Black. 20, in
which the indictment charged that defendant struck the
deceased in and upon the *left* side of the head and over the
*left* temple, giving to the deceased, with the axe aforesaid,
in and upon the *right* side of the head and over the right
temple, one mortal wound. For this clear repugnancy the
indictment was held bad, and even this case has been over-
ruled in 14 Ind. 23, 21 Ind. 441, and in the case of *Cordell v.
the State*, 22 Ind. 1. We think the indictment in the case

at bar sufficiently alleges the part of the body on which the wounds were inflicted, and is not subject either to the objection of repugnancy or uncertainty urged by counsel. The motion to quash was, therefore, properly overruled.

In the progress of the trial witness Carter was permitted to testify as to the dying declaration of Gilbert, against defendant's objections. His evidence was as follows: " Gilbert told him he could not live till morning, that he could not live through the night. Gilbert's voice was very weak. He told me his trouble with Draper originated about a trunk; that Draper and his wife had boarded with him; that some two or three weeks before, they went away, owing him for board, and he left the trunk; that he and Draper had trouble about it then, that they quarreled, and Draper abused him; that Draper had been to him afterwards for the trunk and threatened him; that he refused to let him have it till he paid him, and that he had kept the trunk; that Draper came to his house on Saturday evening before that evening, and called him out doors and outside the gate and told him that by G–d, the d–d son of a bitch, if he did not give up the trunk he would cut his G–d d–d heart out, and skin him, and hang his skin upon the fence to dry; that Draper knocked him down, and inflicted the wounds of which he, Gilbert, believed he was dying."

It is urged as an objection to the evidence that no proper foundation had been laid for its introduction, and that all

**2. DYING DECLARATIONS.** that portion of the statement made by Gilbert, relating to what occurred two or three weeks anterior to the difficulty in which he was stabbed, and all that he said in regard to a quarrel about a trunk, and the threats of Draper previously made, was incompetent, even though the State had laid a proper foundation for the introduction of the dying declaration of the deceased. We think that a proper and sufficient foundation had been laid for the admission of Gilbert's statement, for previous to his making it, and on the same night it was made, his attending physician testified that he had informed

him that he could not get well, and that there was no hope for his recovery, and that Gilbert believed what he told him. Gilbert also. told witness Carter, at the time he made the statement, that he could not live till morning. There can be no doubt that the statements were made by Gilbert after he had abandoned all hope of recovery, and in view of death, then impending. There was, therefore, no error committed by the court in admitting what Gilbert said at that time, so far as his statement related to and was confined to what was said and done when he was fatally wounded by the defendant.

It seems to be well established law that dying declarations are admissible as to those facts and circumstances 3. ——. constituting the *res gestæ* of the homicide, but as to all other matters occurring anterior to the killing, and not immediately connected with it, they are inadmissible. In 1 Green. Ev., Sec. 156, it is said, " it is now well settled that dying declarations are admissible as such, only in cases of homicide, when the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declaration." We have not been able to find any case where such evidence has been given a wider scope than is laid down in the above rule. In the case of *Leiber v. Commonwealth*, 9 Bush. 11, it was held that dying declarations should be restricted to the act of killing, and the circumstances immediately attending it, and forming a part of the *res gestæ*. In that case the declarations given in evidence, not only conduced to identify the defendant as the perpetrator of the homicide, and the circumstances immediately attending it, but it also purported to disclose former and distinct transactions, from which the jury might have inferred malice on the part of the defendant. Hardin, Justice, in delivering the opinion, says: " the court erred in admitting a part of the dying statements, however competent the evidence may have been, and for that cause, if for no other, the judgment should be reversed." In the case of *Moses* (a slave)

*v. The State,* 35 Ala. 421, the defendant was charged with killing one Martin Oaks, an overseer. On the trial, the dying declarations of the deceased were admitted, giving the circumstances attending the homicide, in giving which, deceased stated "that Moses, the defendant, was the only slave on the plantation at enmity with him," and that "Moses was a runaway." In the opinion of the court it is said that the declarations by deceased, that Moses was the only slave on the place at enmity with him, and that Moses was a runaway, do not fall within the principle admitting dying declarations, and the court in admitting them erred. The enmity of the defendant towards deceased, of which previous threats and previous attempts to commit the same act would have been, evidence in the case, pointing to the accused as the guilty party, was a fact extrinsic to the circumstances attending the homicide. The judgment was reversed for that error; so also in the following cases: *Johnson v. The State,* 17 Ala. 618; *Ben. v. The State,* 37 Ala. 103.

In the case of *The State v. Shelton,* 2 Jones (N. C.) 360, the deceased, in making his dying declarations, stated that two or three hours before the rencounter in which he received the blow, which caused his death, he had had a difficulty and quarrel with the defendant. This latter declaration was admitted, and for the error in admitting it, the judgment was reversed and a new trial awarded, the court holding that dying declarations must be restricted to the act of killing, and the circumstances immediately attending the act and forming a part of the *res gestœ.* In the case of *Nelson v. The State,* 7 Humph. 542, the defendant was indicted and convicted for the murder of one Sellers. On the trial the following dying declarations of deceased were admitted: "That Nelson, the prisoner, had stabbed him; that Nelson had tried to kill him two or three times before." It was held that dying declarations were admissible from the necessity of the case to identify the prisoner and establish the circumstances of the *res*

*gestæ* or direct transaction from which death results. When they relate to former and distinct transactions, they do not come within the principle of necessity. In the case of *Hackett v. The People*, 54 Barb. 370, the dying declarations of deceased were admitted. They contained not only an account of the transaction which terminated in the death of the deceased, but also other facts, and among them the statement "that Hackett, the defendant, had often threatened to kill him." The prisoner's counsel objected to reading the whole statement, admitting that a portion might be read. This objection was overruled. Ingraham, Justice, delivering the opinion of the court, in speaking of that portion of the declaration in which deceased stated "that Hackett had often threatened to kill him," observed that "this statement was clearly open to the objection that it did not relate to the transaction from which the death resulted," and adds that its effect on the jury may have been very injurious. "The prisoner was on trial for his life, and the whole question, whether he could be convicted of murder in the first degree, was to be decided by proof of prior ill-will, or prior cause for a premeditated act. It seems to me to be a dangerous precedent to extend the rule which admits dying declarations, made under conviction that the party must die, beyond the immediate transactions which led to his death. The evidence referred to should not have been received and the judgment should be reversed." The limits prescribed to the admissibility of dying declarations in the rule as laid down by Greenleaf, *supra*, and as illustrated in the adjudicated cases above alluded to, in which the rule has been practically applied, necessarily lead to a reversal of the judgment in this case, on the ground that only so much of Gilbert's dying declaration as related to the killing and the facts and circumstances attending it, and constituting a part of the *res gestæ*, should have been allowed to go to the jury. The cause in other respects seems to have been

well tried. Judgment reversed and cause remanded, in which the other judges concur.

REVERSED.