THE STATE v. VANSANT, *Appellant.*

| 80 | 67 |
| 100 | 107 |
| 80 | 67 |
| 106 | 229 |
| 80 | 67 |
| 110 | 201 |
| 80 | 67 |
| 126 | 513 |
| 80 | 67 |
| 137 | 135 |

| 80 | 67 |
| 172 | ¹202 |
| 172 | ²203 |

1. **Dying Declarations.** To be admissible in evidence, dying declarations must relate to the identification of the prisoner or the deceased, or to the act of killing or to the circumstances attending the act and forming part of the *res gestae.* Hence, where the declaration was: "I believed he (defendant) was going after his pistol when he went into the house. * * I had seen him at the house with a pistol before;" *Held,* that this ought to have been excluded.

2. **Dying Declarations** are in their nature secondary evidence, and are so regarded in the law. It is, therefore, error to instruct a jury to give them the same weight they would if the declarant had testified before them.

3. **Homicide.** A series of instructions on the law of homicide, including self-defense, approved.

*Appeal from Jackson Criminal Court.*—HON. H. P. WHITE, Judge.

REVERSED.

The instructions given to the jury were as follows:

1. If you shall find and believe from the evidence that at the county of Jackson, State of Missouri, at any time prior to the 31st day of May, 1883, the day on which the indictment in this cause was filed, the defendant John Vansant, in the manner and by the means specified in the indictment, willfully, with deliberation, premeditation and malice aforethought, assaulted and wounded the deceased, Porter Armstrong, and that within one year and a day thereafter, and before the filing of said indictment, the said Porter Armstrong, at the county and State aforesaid, died from the effects of the wound so inflicted upon him by the defendant, the verdict should be that defendant is guilty of murder in the first degree.

2. If you shall believe and find from the evidence that, at the county of Jackson, State of Missouri, at any time within three years next before the filing of the indictment in this cause, the defendant, John Vansant, in the manner

and by the means named in the indictment, willfully assaulted and wounded the deceased, Porter Armstrong, and that within one year and a day thereafter, and before the filing of said indictment, the said Porter Armstrong, at the county and State above named, died from the effects of such wound, but shall further believe and find from the evidence that at the time of such assaulting and wounding he, the defendant, was so far under the dominion of passion, in consequence of blows inflicted upon or indignities offered to his person by the deceased, as to make him regardless of the admonitions of reason and incapable of thinking coolly of the nature and consequences of his act, the verdict should be that the defendant is guilty of manslaughter in the fourth degree. You must bear in mind in this connection that it is the passion resulting from the provocation named above, not the provocation itself, which reduces the grade of the offense from murder to manslaughter. Consequently, although you may believe that there may have been the necessary provocation according to the instructions to produce a passion such as is described in this instruction, still if such provocation did not produce such passion, or having produced it there was sufficient time for the blood to cool before the killing, there is in the act of killing no grade of the offense below that of murder in the first degree. And the court further instructs you that whether a provocation such as is described in this instruction was or was not given the defendant, you must determine. If you find that such provocation was given, you must then determine whether it produced the passion necessary to reduce the grade of the offense, and in case you find that the provocation did produce such passion you must then determine whether sufficient time elapsed between the production of such passion and the killing for the blood to cool.

3. If you shall believe and find from the evidence that the defendant, in the manner and by the means named in the indictment, assaulted and wounded the deceased,

Porter Armstrong, but shall also find and believe that in so doing he, the defendant, was acting in the necessary defense of his person, you should not find him guilty of any offense whatever.. To acquit on the ground of self-defense it must appear that a party was apprehensive, in consequence of the acts of the deceased, that injury of a bodily nature to himself was impending and about to fall on him, and that the taking of the life of the deceased was, under the circumstances, apparent or actual, necessary to prevent such injury. If, therefore, you shall believe from the evidence that from the conduct and acts of the deceased at the time he was wounded, by the defendant, (if you find that he was wounded by the defendant,) he, the defendant, had reasonable cause to believe and did believe that the deceased was about to do him some great bodily harm or take his life, and that he, the defendant, had reasonable cause to believe and did believe that there was danger of the deceased executing his purpose and accomplishing his design, and that he, the defendant, wounded the deceased for the purpose of preventing such execution and such accomplishment, the verdict should be that the defendant is not guilty, because such wounding, under such circumstances, is justifiable in law because it was done in self-defense. You must observe that in order to acquit on the ground of self-defense it is not necessary that the danger of death or injury to which the defendant believed himself exposed was real or actual, or that it was impending and about to fall on him. It is only necessary that it should appear to you that the defendant so believed himself to be exposed to such danger and that his belief was reasonable, considering the circumstances of the case as proven, and the situation of the parties at the time, and that he acted in good faith upon the situation as it appeared to him and under a real apprehension of danger to himself.

4. The law of self-defense does not imply the right of attack, nor will it permit of acts done in retaliation or for revenge. Therefore, if you shall believe and find from the

evidence that the defendant sought, brought on or voluntarily entered into a difficulty with the deceased for the purpose of wreaking vengeance upon him, or if you shall find and believe that he wounded the deceased at a time when he had, because of the acts of the deceased, no reasonable apprehension of immediate and impending injury to himself, and did so from a spirit of retaliation and revenge for the purpose of punishing the deceased for past injuries done him, the defendant, then the defendant cannot avail himself of the law of self-defense, and you should not acquit on that ground. And the court further instructs you that in case you find that the defendant sought, brought on or voluntarily entered into a difficulty with the deceased, it does not matter in the application of the law of self-defense how great the danger or imminent the peril to which the defendant may have believed himself to have been exposed during such difficulty.

5. You should consider any threats which you may believe from the evidence were made by the deceased against the defendant, and give them such weight in determining the nature of the transaction giving rise to the charge for which the defendant is now upon trial as you deem proper. Mere threats, however, will not justify on the ground of self-defense the wounding alleged in the indictment; nor will threats alone warrant the party against whom they are made in attacking or killing the party who made them.

6. The character of the deceased is a proper matter for your consideration, and you should give it such weight as you deem proper in determining whether or not he, by his acts at the time of the wounding, gave the defendant reasonable cause to apprehend such danger as to justify his act of wounding on the ground of self-defense according to the law upon that subject as stated in these instructions. The mere fact, however, that the deceased was a man of bad character, if you believe he was of such character, will not justify the taking of his life.

7. The character of the defendant is also a matter for

your consideration. The evidence as to his character should be given such weight in explanation of the transaction be-tween himself and the deceased as to you seems proper. But if you shall conclude from all the evidence that the defendant is guilty, you should not acquit him because you may believe that he has heretofore been a person of good repute.

8. You are sole judges as to the weight of evidence and the credibility of witnesses, and if you believe that any witness has sworn willfully falsely as to any material matter in controversy, you are at liberty to disregard or reject the whole of such witness' testimony. In passing upon the credit of any witness and the weight to be attached to his or her testimony, you should, in connection with all the other facts and circumstances proven, take into account the conduct and appearance of such witness upon the stand, the interest of such witness in the result of the trial, the motives actuating the witness in testifying, the probability of the statements of such witness, and his or her inclina-tion to speak truthfully or otherwise as to matters within his or her knowledge.

9. The statement in writing read to you as the dying declaration of the deceased, Porter Armstrong, is to be re-ceived by you as such dying declaration. But because it is a dying declaration you are not necessarily bound to be-lieve it. You should consider it in the same manner that you would consider it had the said Armstrong testified be-fore you, and in determining the weight to be attached to it you should be governed by the rules for determining the weight of testimony specified in instruction number eight.

10. In considering what the defendant has said since the fatal shooting, if you believe he has said anything in relation thereto, you should consider it all together. He is entitled to the benefit of what he said for himself, if true, as the State is to the benefit of what he said against him-self. In any conversation of defendant proved by the State, what he said against himself the law presumes to be true

The State v. Vansant.

because against himself, but what he said for himself you are not bound to believe because said in a conversation proved by the State. You may believe it or disbelieve it as it may be shown to be true or false by all the evidence in the case.

11. In law a person accused of crime is presumed to be innocent. This presumption entitles him to an acquittal unless it is overcome by evidence which establishes his guilt beyond a reasonable doubt. A juror is understood to entertain a reasonable doubt when he has not an abiding conviction to a moral certainty that the party accused is guilty as charged. You should acquit the defendant if you entertain a reasonable doubt as to his guilt, and you should also acquit if it is as reasonable, considering all the facts or circumstances proven to conclude that he is innocent, as to conclude that he is guilty, or if all the facts and circumstances can be reasonably reconciled with any theory other than that of his guilt. A doubt, to authorize an acquittal, however, should be reasonable and substantial, and one fairly deducible from the evidence considered as a whole; a mere possibility that the defendant may be innocent will not warrant a verdict of not guilty.

12. If you find the defendant guilty of murder in the first degree, you will simply so state in your verdict. You are charged with no duty respecting the punishment in case of conviction for murder in the first degree. If you find the defendant guilty of manslaughter in the fourth degree, you will so state in your verdict, and assess his punishment at imprisonment in the State penitentiary for a term of two years, or at imprisonment in the county jail not less than six months, or at a fine not less than $500, or at both a fine not less than $100 and imprisonment in the county jail not less than three months. If you find the defendant not guilty you will simply so state in your verdict.

*Peak, Waddill & Wofford* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

HOUGH, C. J.—The defendant was indicted in the criminal court of Jackson county, at its May term, 1883, for the murder of Porter Armstrong. The only witness of the homicide was a colored cook at a hotel in the city of Independence, where the homicide occurred. She testified as follows : I have lived at Independence several years ; know John Vansant. He was working at the Farmers House. I know Porter Armstrong ; was working at the Farmers House when Armstrong was shot. Armstrong was shot in the back-yard at hotel. I was finishing up my work, cleaning the dishes in the kitchen ; put on my things to start home ; went back to tell Vansant to get some things and met him in the office with a pistol ; saw Armstrong come out of the dining-room and go through the kitchen into the back-yard. This was before I saw Vansant. Vansant came out of the dining-room into the kitchen and went to the back-door. Armstrong was in the back-yard. As soon as Armstrong saw Vansant, he raised up the rock to throw at him, and Vansant fired at him. Armstrong was standing by a tree in the back-yard. I could not tell whether Vansant shot as soon as he came to the door ; saw Armstrong and Vansant playing cards in the dining-room before the shooting. After the shooting Armstrong holloaed and went to the gate ; Vansant went back into the office. Armstrong picked up the brick when he saw Vansant coming with a pistol. Armstrong was standing right in front of Vansant, facing him, when Vansant shot. Armstrong raised the brick back this way, to throw, and Vansant shot him. This shooting occurred in Jackson county, Missouri, in April, 1883.

The dying declaration of Armstrong was read in evidence, against the objection of the defendant, as follows: My name is Porter Armstrong. I am twenty years old. The doctor tells me I am going to die, and I believe it ;

knowing. that I am about to die, what I now say is true: John Vansant and I were in the dining-room at the Pacific Hotel playing cards; I beat him; and he wanted to go to cheating.   After I had won his money he grabbed it up; I grabbed him round the. neck and took it away from him. After I took it away from him he called me a son-of-a-bitch, and I struck him with my left hand.   Then he walked into the office and I went out through the dining-room and kitchen, out doors, and stopped out there.   After I got out doors Vansant came to the door of the kitchen with a pistol and called me a son-of-a-bitch, and snapped the pistol at me.   He presented it to me the second time, snapped it and it went off and shot me.   I did not have any weapon of any kind.   When I went out doors I picked up a rock; but did not throw it at him.   Vansant was standing in the kitchen door.   He was about nine feet from me.   He snapped the pistol at me as soon as he got to the door.   I believed he was going after his pistol when he went into the office. I had seen him at the house with a pistol before.

The defendant testified as follows :   I do not know my age exactly ; am about eighteen or nineteen; have known Porter Armstrong several years; never had anything to do with him until after I commenced working at the Farmers House; have been working there off and on two years. On the day of the shooting I was doing some work in the dining-room.   It was about three o'clock ; Armstrong was in the kitchen talking to the cook, Missouri Crow.   He came into the dining-room and asked me to play a game of cards.   I told him I did not have time.   He insisted.   I told him I could not play until I had finished my work. I then went into the office and washed the ice and put it in the cooler and returned to the dining-room.   Armstrong still insisted on a game of cards.   I then finished up my work in the dining-room, and went back into the office and got the cards and came back, and we played five up for cigars.   We played several games and he beat, and then I commenced beating him, and he said I was swindling him ;

he then cussed me, and called me a damn-son-of-a-bitch, and grabbed me. I told him I would give him back all the money I had won from him rather than have a difficulty. I had won twenty-five cents worth of cigars from him. I gave him a quarter, and he demanded ten cents more. I told him I did not owe that and would not give it to him. He then cussed me and struck me in the face. I staggered, and before I could recover myself he struck me again and knocked me down. I then jumped up and ran into the office; waited there a moment, and supposing he had left the dining-room, I returned to the dining-room to get some soiled napkins I had left on the sideboard. When I got near the sideboard Armstrong sprang up from behind a table with a razor in his hand, saying, " God damn you, I have got you now." I ran back into the office and shut the door; opened my valise and took out a pistol; thinking I heard Armstrong coming around the house to the front door of the office, I started back through the dining-room to go into the kitchen so as to avoid him; heard some one coming around the house toward the front door of the office and thought it was Armstrong ; went into the kitchen and had my pistol in my hand. When I got to the kitchen door I saw Armstrong standing in the yard near a tree, about ten feet from the door, with a large brick in his hand drawn back ready to throw. He said, "Now, God damn you, I have got you," and I fired ; shot to defend myself; then went back into the office and put my pistol in my valise, and waited for an officer to come; as soon as the officer came I surrendered myself. At the time I shot, Armstrong was in the act of throwing the brick. I believed myself to be in great danger. Armstrong was much larger and stronger than I; weighed twenty-five or thirty-five pounds more than I. I did not snap my pistol; it went off the first time.

There was testimony that the defendant was a peaceable law-abiding man, and that the deceased was a quarrelsome dangerous man ; that the parties had had a diffi-

culty the day before, and that the deceased had threatened the life of the defendant.

The first question presented for determination by the record in this case is, whether the following statement in the dying declaration of Armstrong was admissible in evidence, to-wit: "I believed he (the defendant) was going after his pistol when he went into the office. * * I had seen him at the house with a pistol before."

1. DYING DECLARATIONS.

While the admission in evidence of the dying declarations of one murdered, is not regarded as an infraction of the constitutional provision that the accused shall be confronted by the witnesses against him, still such declarations are regarded in the light of hearsay testimony, and as admissible only from the necessity of the case and to prevent a failure of justice, and are, therefore, properly restricted to the identification of the prisoner and the deceased, and to the act of killing and the circumstances immediately attending said act and forming a part of the *res gestae*. This was expressly decided by this court in the case of the *State v. Draper*, 65 Mo. 335, where the precise point now before the court was carefully considered. *Vide*, also, Wharton Crim. Ev., § 278; *Collins v. Commonwealth*, 12 Bush 271; *State v. Wood*, 53 Vt. 560. As the admissibility of such declarations is not dependent upon the absence of other evidence of the same facts, but is founded upon the presumption that in most cases no other equally satisfactory proof is attainable, neither will the error of admitting any statement beyond the limitations prescribed be cured by reason of the fact that there is other competent evidence of such facts before the jury. 1 Greenleaf's Ev., (14 Ed.) p. 210, note. The first clause of the language of the declarant under consideration, is objectionable because it is a mere matter of opinion, and would have been incompetent if delivered by a living witness under oath. It is material because it impliedly attributes to the defendant a purpose formed, at the time designated, to kill the deceased, and

the taking of the necessary steps to put that purpose into execution, and thus tends to fix the grade of the homicide, not by any statement of facts, but by the expression of a mere opinion. 1 Greenleaf Ev., § 159.

The latter portion of said statement relates to previous events in no way connected with the homicide, and was calculated perhaps to prejudice the jury against the defendant as a man in the habit of carrying deadly weapons, and, therefore, of malevolent disposition. Such statements as this are declared by the authorities to be inadmissible. *State v. Draper, supra.* We are of opinion, therefore, that the court erred in admitting those portions of his dying declaration to which we have particularly referred.

We are further of opinion that the court properly confined the instructions to the law of murder in the first degree, manslaughter in the fourth degree and the law of self-defense. We have been unable to find anything in this record which would have warranted an instruction for murder in the second degree.

We are of opinion, however, that the court erred in declaring, as it substantially did in the ninth instruction, that the jury should give the same force and effect to the dying declarations read before them that that they would had the matters therein stated been testified to before them by Armstrong. This, as was said by Judge Yerger in the case of *Lambeth v. State*, 23 Miss. 358, is to give to secondary evidence the same weight which is due to direct testimony.

It is true that in some of the authorities the admissibility of dying declarations is put upon the ground that " the persons whose declarations are thus admitted are considered as standing in the same situation as if they were sworn, the danger of impending death being equivalent to the sanction of an oath." 1 Greenleaf Ev., § 157. It is to be remembered, however, in weighing such testimony that feelings of animosity and ill-will once aroused are not always allayed, and that the passion of anger attending the

fatal occurrence itself is not always extinguished even by the consciousness of impending death; and it is also to be remembered that the accused is deprived of all power of cross-examination, "a power quite as essential to the eliciting of all the truth as the obligation of an oath can be." Roscoe's Crim. Ev., 36; 1 Greenleaf Ev., § 162. Besides, such declarations are afflicted with the common infirmity which attaches to all oral statements or verbal admissions, reduced to writing or repeated by another, and are liable to be colored or deflected by the medium through which they are transmitted to the jury.

After reviewing these considerations, Mr. Wharton, in his work on Criminal Evidence, section 276, adds the following just and philosophic observations: "Nor can it always be said that the consciousness of the near approach of death is an equivalent to an oath administered on the witness-stand. A witness sworn in court knows that he may be convicted of perjury if he testifies falsely. A dying man, if he believes in a future retribution, will speak, if his faculties are unimpaired, under a similar sanction; but all dying men do not retain their faculties unimpaired, nor do all dying men believe in a future state of retribution. Convicts on the scaffold have, as a class, as little hope of reprieve as any persons on the eve of death. Yet there is no kind of evidence so unreliable as the last speeches of convicts on the scaffold. The weight, therefore, to be attached to dying declarations depends upon these considerations: 1. The trustworthiness of the reporters. 2. The capacity of the declarant at the time to remember accurately the past; and 3. His disposition truly to tell what he remembers." We think it quite plain, therefore, that the testimony of a living witness, seen and heard by the jury and cross-examined before them, is entitled to more weight and furnishes a more reliable basis for the verdict of a jury than the reported statements of a dying man whose mental and physical condition at the time they were made could not be observed by the jury, and the accuracy of whose

statements has not been subjected to the crucial test of a cross-examination in court.   Such, indeed, was the ruling of this court in the *State v. McCanon*, 51 Mo. 160, but as no authorities are cited and no satisfactory reasons given for the conclusion announced in that case, we have thought it best to briefly state the grounds of our opinion, inasmuch as the *State v. Green*, 13 Mo. 382, announces a contrary rule and does not appear to have been brought to the attention of the court in the case of the *State v. McCanon*.   *Vide*, also, *Walker v. State*, 37 Texas 365; *Lambeth v. State*, 23 Miss. 358.

The remaining instructions seem to us to be unobjectionable, and to have fairly presented the case to the jury, 3. HOMICIDE.   with the exception of the third, which is subject to a verbal criticism; the statute declares that a homicide is justifiable when committed in the lawful defense of one's person, when there shall be reasonable cause to apprehend a design to commit a felony, or to do some great personal injury, and there shall be reasonable cause to apprehend immediate danger of such design being accomplished.   The third instruction contains the word " believe " instead of " apprehend," in declaring the law of self-defense.   Attention was called to a similar discrepancy in the case of *State v. Stein*, 79 Mo. 330.

Objection was taken at the trial to certain remarks of the judge, as to the state of the evidence then before the jury, made by him in excluding certain testimony offered by the defendant, which we deem it unnecessary, under the circumstances, to specially notice.   The error complained of can be avoided on another trial.   Too much care cannot be observed by judges, especially in criminal trials, to abstain from communicating to juries their own impressions of the legal effect of the testimony.   The error committed in defining " deliberation " is harmless, as there is no evidence of any " just cause " of provocation, as distinguished from a lawful provocation.   *State v. Ellis*, 74 Mo. 207; *State v. Talbott*, 73 Mo. 347.

For reasons heretofore given, the judgment of the criminal court will be reversed and the cause remanded. All the judges concur.