THE STATE v. NANCY KUNKEL, Appellant.

Division Two, November 19, 1926.

1. **DYING DECLARATION: Competency: Res Gestae: Trespasser.** A statement in the dying declaration of deceased that "Mrs. Nancy Humphreys shot me through her window just a little while ago. She was inside the window" was admissible. But his further statement that "she invited me down to see her" referred to some former period and was not a part of the res gestae relating to the homicide, and therefore was inadmissible as a dying declaration. And since deceased by said statement was seeking to

justify his presence in defendant's back yard, and without it he was a trespasser, and she denied that she had invited him to visit her and testified that she knew nothing of his presence when she fired through the window, the statement was damaging to her, and its admission reversible error.

**2. REPUTATION: Expulsion from Lodge after Homicide.** Defendant having introduced evidence that her reputation for morality was good prior to the homicide and that she was a member of certain lodges and associated with women belonging to them, and having confined the examination into her reputation for morality to time antedating the shooting, it was error to permit the State to show that after the shooting she was expelled from said lodges.

Corpus Juris-Cyc. References: **Criminal Law,** 16 C. J., Section 2506, p. 1063, n. 85; 17 C. J., Section 3662, p. 319, n. 22. **Homicide,** 30 C. J., Section 275, p. 90, n. 77; Section 392, p. 171, n. 68 New; Section 504, p. 263, n. 37; Section 510, p. 272, n. 25, 27, 30, 31; p. 273, n. 39. **Indictments and Informations,** 31 C. J., Section 493, p. 858, n. 95.

Appeal from Chariton Circuit Court.—*Hon. David H. Harris,* Special Judge.

REVERSED AND REMANDED.

*John D. Taylor* for appellant.

(1) The proof was not sufficient to show that the statement offered as a dying declaration was made under a belief that death was impending and that there was no hope for recovery. (2) The court should have ordered the special parts of the declaration objected to stricken out. State v. Keller, 224 Mo. 145, 167; State v. Parker, 172 Mo. 191; State v. Barnes, 204 S. W. 264; State v. Powell, 217 S. W. 35; State v. Hostetter, 222 S. W. 750; State v. Wilks, 278 Mo. 481; 14 A. L. R. 758-n; State v. Vasant, 80 Mo. 67; State v. Chambers, 84 Mo. 406. (3) The testimony of witnesses showing defendant's expulsion from a lodge subsequent to the date of the shooting was highly prejudicial and is in itself ground for reversal.

*North T. Gentry,* Attorney-General and *Claude E. Curtis,* Special Assistant Attorney-General, for respondent.

(1) The evidence was sufficient to show that deceased made his statement in the realization of impending death. State v. Parker, 172 Mo. 191; State v. Draper, 65 Mo. 335; State v. Bowles, 146 Mo. 6; State v. Clift, 285 S. W. 706; State v. Peak, 237 S. W. 466; State v. Hostetter, 222 S. W. 750. (2) Dying delarations are admissible as to the facts and circumstances constituting the *res gestae.* State v. Kelleher, 224 Mo. 167; State v. Parker, 172 Mo. 191; State v. Hostetter, supra; State v. Peak, 237 S. W. 466; Underhill's Criminal

Evidence (3 Ed.) sec. 178.   (3)   The dying declaration admitted in
evidence concerned matters of the *res gestae* and it was properly
admitted.   State v. Peak, 237 S. W. 466; State v. Hostetter, 222
S. W. 750; State v. Barnes, 204 S. W. 264; Burnett v. Commonwealth,
255 S. W. (Ky.) 544; Mays v. Commonwealth, 255 S. W. (Ky.)
257; People v. Cipolla, 100 Pac. (Cal.), 252; State v. Parker, 96
Mo. 392; State v. Parker, 172 Mo. 203.   (4)   The State was entitled
to show the reputation of the defendant prior to the date of the
commission of the offense for which she was charged.   State v. Wertz,
191 Mo. 569.   It should have been made plain that the State was
not attempting to show the reputation of defendant subsequent to the
time of deceased's death.

RAILEY, C.—On November 22, 1924, a grand jury of Chariton
County, Missouri, filed in the circuit court of said county, an indict-
ment charging defendant with murder in the first degree, in having
feloniously shot Willard Cowen, in said county on September 25,
1924, which said shooting resulted in the death of said Cowen on the
following day.

On December 22, 1924, a change of venue was granted defendant,
and Judge Arch B. Davis, of the 36th Judicial Circuit, was called
as special judge to try said cause.   Defendant was duly arraigned,
entered a plea of not guilty, and on her application the cause was
continued to the November term, 1925, of said court.   Thereafter,
on November 17, 1925, it appearing that Judge Arch B. Davis had
resigned, Judge David H. Harris, of the 34th Judicial Circuit, was
selected as special judge to try this cause.   Thereafter, on December
28, 1925, it appeared to the court, that, since the institution of this
proceeding, defendant Nancy Humphrees  had re-married and that
her name was Nancy Kunkel, it was ordered that the cause be pro-
ceeded with accordingly.   Thereafter, on December 29, 1925, the
case was tried before a jury, and on said date a verdict was returned
finding defendant guilty of murder in the second degree and assess-
ing her punishment at ten years' imprisonment in the State Peniten-
tiary.   Thereafter, on the same day, defendant filed her motions for
a new trial and in arrest of judgment.   Both motions were overruled,
allocution granted, judgment rendered, sentence pronounced in con-
formity with the verdict, and an appeal allowed defendant to this
court.

Dr. J. W. Hardy, a witness for the State, testified, in substance, that
he was a practicing physician, in Sumner, Chariton County, Missouri;
that on the night of the 25th of September, 1924, pursuant to a
call, he went to a restaurant in the town of Sumner, where he found
deceased, Willard Cowen, lying on the floor, suffering from a gunshot
wound; that he had Cowen carried across the street to his office,

and found a bullet wound in his abdomen; that in conjunction with Dr. Jackson of Kansas City they examined Cowen; that the latter talked too much and everybody was sent out of the room except one Stoner and witness; that the latter told Cowen if he wanted to say anything, Stoner and himself would write it down. To qualify the statement hereafter mentioned as a dying declaration, the following occurred:

"Q. What did he say about whether he would get well or not? A. He says: 'I am all in, no use to do anything with me.' "

He further testified that he told deceased over and over, that he would not let him die; that he believed deceased was not going to die; that deceased at the same time also said: "I think I am going to die; I am dying now." That he (witness) wrote down the substance of deceased's statement, which was read over to him and signed by deceased. The above was marked as "State's Exhibit 1," and offered in evidence. It reads as follows:

"I, Willard Cowen, fearing that I am mortally wounded, and thinking I am about to die, make this statement: Mrs. Nancy Humphrees shot me through her window just a little while ago. She invited me down to see her, and after talking to me for some little time, told me to wait till she went and opened the door, and walked back to a shelf or somewhere and came back and without saying a word, shot me in the abdomen. She was inside the window.

"Willard Cowen.

"J. W. Hardy, Witness,
"James Stoner, Witness."

It was objected to by defendant, and some portions of same were asked to be excluded. The objections were overruled and said exhibit was read to the jury as written.

J. W. Stoner witnessed the above statement, and testified that it was read over to deceased as written; that quite a while before the shooting there seemed to be a feeling of animosity between defendant and deceased; that about one month before the shooting they apparently became friendly.

Mrs. Sarah Bennett testified that on the night of the shooting defendant was arrested and brought to her house; that the next morning she asked witness if deceased was badly hurt, and said she did not know she was shooting anybody; that the dogs were making a big noise and she shot out of the window to scare them; that she then said: "What was he anyway? he didn't do anything but steal whiskey and get drunk."

R. S. Hardesty testified that defendant and deceased were not friendly up to a month before the shooting, but a short time before the shooting they had apparently become friendly; that he saw them standing on the street talking and apparently friendly.

Mrs. Victor Smith testified that she had known defendant since 1917, and that they were neighbors; that defendant's husband died about January 10, 1924; that she was present when he died; that defendant, in speaking of deceased, said: "Well if he ever crosses my path he will go to the hospital all over again and I don't think anybody will be able to do him good." (Deceased had been in the hospital before the shooting.)

Mrs. E. Zimmerman testified that she had known defendant about eight years; that about November 1, 1923, she heard defendant at her home, in speaking of deceased, say she would "kill the little son-of-a-b— sometime for some of his smartness;" that in January, 1924, she said she would kill deceased if he ever crossed her path; that she would get friendly with him.

J. Zimmerman testified that in November, 1923, he heard defendant say, in speaking of deceased, that she would "kill the little son-of-a-b—."

Ralph Noble, deputy sheriff, arrested defendant on September 25, 1924, and procured from her the pistol with which deceased was shot. He testified that in a statement made to him, defendant said: "She heard a noise outside and she fired out the window and she didn't know she had hit anybody at all;" that he knocked on her door three times; that she appeared to have just awakened from sleep; that he told her he had a warrant for her arrest; that she said she had shot out of the window and did not know she had hit anybody; that there was a bullet hole through the screen in a back bedroom window about twelve inches from one side of the window and about fourteen inches from the other and from two to three inches from the bottom of the screen; that according to the location of the house, if a person wanted to go to the west part of the house he would either have to come around the north side of the house and back to the west part or he would have to go to the south side and come up an alley and climb a fence.

Ralph Bennett testified that about one month before Cowen's death, Earl Robinson and deceased were in front of a building laughing, and defendant made the remark: "I'll kill that little son-of-a-b— if it's the last thing I ever do."

Mrs. William Downey testified that about January 10, 1924, she was at defendant's home when her husband died, and heard defendant say, in speaking of deceased, that "if he ever came back, she would shut the little dirty son-of-a-b—'s mouth so he wouldn't be able to scatter any more hot air."

The testimony for the defendant was as follows:

Nancy Kunkel, the defendant, testified, in substance, that in September, 1924, she had a family of three daughters; that two of them were going to school in Chillicothe, and she was living alone in Sum-

ner; that for some time she had been disturbed by prowlings about her yard; that she communicated this fact to her son-in-law, Mr. Bunch, and he gave her an automatic 38, to protect herself; that she put it in her bedroom and kept it on a chest of drawers; that on the night of September 24th, she had been up all night assisting Dr. Lewis; that she worked the day of the 25th in the post office and did her house work; that she retired early on the night of the 25th, and heard a noise that awakened her from sleep; that she located the noise on the west of the house; that the dog was barking; that she got up, called ''Who is there?'' and nobody answered; that she heard a rustle in the briars west of the house; that she got the revolver and fired a shot downward, not knowing what was there, but thinking she would scare whatever was there; that she did not see anybody and did not know Cowen was at the window; that she had not invited Cowen to come to her house, nor had she ever invited him to come there; that after firing the shot, she did not know the bullet had struck anybody, until informed by Mr. Noble, who made the arrest; that after firing the shot, hearing no sound, she went back to bed and went to sleep; that she was in bed asleep when Mr. Noble came to arrest her. She denied making a threat against Cowen to Zimmerman and wife.

Carl Taylor testified that he was cashier of the People's Bank at Sumner; that he was familiar with the house in which Mrs. Kunkel lived. He identified pictures of the house, showing the location of the bedroom. He also identified a frame work as a correct representation of the window, through which the shot was fired, and the location of the bullet hole.

Dr. W. D. West, a practicing physician, and Coroner of Chariton County, testified that he was in Sumner on the night of September 25, 1924; that he went to Dr. Hardy's office and examined the wound on deceased.

In rebuttal, Bert Downey and wife, Ed Stoner, Rex Donovan, Mrs. Vic Smith, Sarah Bennett and Sam Robinson, each testified that defendant's reputation for morality was bad. On the other hand, Dr. A. L. Lewis, Frank Northcott, C. W. Taylor, William Dillon and Amanda Sharp, each testified that defendant's reputation for morality was good.

The instructions and rulings of the court will be considered later.

I. The indictment is sufficient as to both form and substance. [State v. Clay, 201 Mo. l. c. 686; State v. Wilson, 231 **Indictment.** S. W. 597-599 and cases cited.]

II. It is contended by appellant that the proof offered as to the alleged dying declarations of deceased, contained in the State's Exhibit 1, offered in evidence and heretofore set out,

was insufficient to show that they were made by deceased under a
belief that his death was impending and that there was
**Dying** no hope of his recovery. The evidence in respect to
**Declaration.** this matter has been set out very fully, and need not be
repeated at this time. We are of the opinion that, omitting the
formal part, the *following* portion of said statement, to-wit, "Mrs.
Nancy Humphrees shot me through her window just a little while
ago, . . . She was inside the window," was admissible as a
dying declaration of deceased. [State v. Clift, 285 S. W. l. c. 707;
State v. Peak, 237 S. W. l. c. 469; State v. Hostetter, 222 S. W. l. c.
752; State v. Parker, 172 Mo. 191; State v. Bowles, 146 Mo. 6; State
v. Draper, 65 Mo. 335.]

III. The remainder of said statement was objected to by defend-
ant, and admitted over her objection. She also complained in her
motion for a new trial of the admission of same. It may be conceded
that defendant shot through one of her screened windows and that
the ball from her pistol inflicted on deceased the wound which occa-
sioned his death. It is seriously contended, by appellant, how-
**Prior** ever, that she had not invited deceased to her house, was not
**Event.** aware of his presence there when the shot was fired; that
she had been asleep until awakened by officer Noble, who made the
arrest, and that she knew nothing of deceased's injury until in-
formed by said officer. The record is silent as to what deceased was
doing in defendant's back yard, after night, even if she had previously
invited him to come and see her, as set out in the statement. Consid-
ered in the light of the physical facts, it is evident that the words in
the statement, "She invited me down to see her," if true in fact,
referred to some former period, and was not, therefore, a part of
the *res gestae* relating to the homicide. It was inadmissible and
should have been excluded. [State v. Draper, 65 Mo. l. c. 340; State
v. Vansant, 80 Mo. l. c. 76; State v. Parker, 172 Mo. 191; State v.
Kelleher, 224 Mo. l. c. 167; State v. Wilks, 278 Mo. l. c. 488, 213 S.
W. l. c. 120; State v. Kyle, 225 S. W. l. c. 1016; State v. Jamerson,
252 S. W. l. c. 686-7; State v. Aurentz, 263 S. W. l. c. 180; State
v. Clift, 285 S. W. l. c. 707, and cases cited.]

Several witnesses for the State testified as to the animosity of
defendant toward the deceased. The record discloses that the de-
ceased was shot after night, while in the bushes of defendant's back
yard. Defendant denied that she had invited him to visit her, and
asserted that she knew nothing of his presence when the shot was
fired. It is manifest that deceased was attempting to *justify* his
*presence* on defendant's premises and, hence, was referring to an
alleged *antecedent* invitation to visit her. The above statement was
damaging to defendant, as, without it, the deceased appeared as a
315 Mo.—80.

trespasser upon appellant's property at the time of the shooting, and his presence under the circumstances tended to corroborate the testimony of appellant as to her ignorance of his being there at that time. We are of the opinion, that reversible error was committed in refusing to strike out the above language from the statement, before permitting it to be read to the jury.

IV. As heretofore stated we hold that the following portion of said statement was competent as a dying declaration, to-wit: "Mrs. Nancy Humphrees shot me through her window just a little while ago. . .. . She was inside the window." We are of the opinion that the remainder of said statement, omitting the formal part, was incompetent, is condemned by the foregoing authorities, and should have been excluded. [State v. Wilks, 278 Mo. l. c. 488 and fol.]

V. Appellant assigns as error the action of the court in permitting the State, over her objection, to prove by a witness that she had been expelled from the Eastern Star Lodge after the shooting of deceased. It is contended that, as the State, in rebuttal, pro-

**Reputation.**    duced witnesses who testified that prior to the shooting defendant's reputation for morality was not good, she had the legal right to show, and did show, that prior to the shooting, she belonged to the Eastern Star Lodge and the Lodge of Royal Neighbors.

Mr. C. U. Taylor, a banker, testified that prior to September 25, 1924, defendant's general reputation for morality was good, and that she associated with the women of said lodges. This witness was recalled by counsel for the State on recross examination and the following occurred:

"Q. Mr. Taylor, do you know of her having been expelled from the Eastern Star?

"BY MR. TAYLOR (Counsel for defendant): Wait just a minute. In the first place, I am going to ask the court now to reprimand counsel for asking that question and ask him to discharge this jury. In the first place, it is entirely incompetent, improper matter, and in the next place it would have no tendency to show her innocence or guilt of this charge, and he has not limited it to her membership prior to September 25, 1924.

"BY THE COURT: I don't think you limited it.

"BY MR. TAYLOR (Defendant's counsel): I have always limited it prior to September 25, 1924."

The court permitted the witness to answer, over defendant's objection, that she was expelled from the Eastern Star after the shooting. The bill of exceptions shows that counsel for defendant in the examination of Taylor, the banker, confined his examination to de-

fendant's reputation for morality ·prior to the date of the ·shooting and not thereafter. We hold that the court erred in permitting the State to show, that after the shooting defendant was expelled from the Eastern Star Lodge.

VI. Appellant complains of the refusal of her Instruction D.

**Instructions.** We are of the opinion that Instruction C, given by the court, was sufficient on that subject, and that the court committed no error in refusing said Instruction· D, as asked.

VII. Some other questions are presented in the briefs, but as the matters involved therein may not arise on the re-trial of the case, we have not deemed it necessary to consider same.

On account of the errors heretofore pointed out, the· cause is reversed and remanded. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.