THE STATE v. REED, *Appellant.*

Division Two, January 19, 1897.

1. **Criminal Practice**: JUROR, COMPETENCY OF. A juror is not incompetent because he has formed an opinion as to the guilt of accused from rumors and newspaper reports of the homicide, where he states he can give the accused a fair and impartial trial.

2. ———: JUROR. A challenge of a juror for cause must specify the ground of challenge.

3. ———: DYING DECLARATIONS: MURDER. It is not necessary to first show that deceased was in possession of his mental faculties to render his dying declarations admissible in evidence on a trial for murder.

4. ———: ———: ———. The trial court may in the exercise of a sound discretion permit a dying declaration to be read in evidence after the defense has closed its case.

5. ———: ———: ———. That deceased did not see defendant at the time the latter shot and that deceased was unarmed, are admissible as dying declarations.

6. ———: ———: ———: HARMLESS ERROR. Error in the admission of a dying declaration to the effect that deceased was not thinking of defendant when he shot him, is no ground for reversal where there is no self defense in the case.

7. ———: SELF-DEFENSE: THREATS. Where there is no evidence of self-defense it is not error to exclude testimony of previous threats by deceased against accused.

8. ———: EVIDENCE. Evidence that three days before the homicide the deceased left his pistol in another town, is admissible to show that he was unarmed.

9. ———: SELF DEFENSE: INSTRUCTION. An instruction as to defendant's right to shoot in defense of a third person upon whom an assault was being made by deceased, is not required where defendant testifies that his reason for firing was in defense of someone else.

10. ———: DYING DECLARATIONS: INSTRUCTION. It is proper to refuse to instruct that dying declarations are not entitled to the same weight as would be the testimony of deceased if he were a witness testifying in court, since it would be a comment on the evidence.

11. ———: MURDER: MANSLAUGHTER.—The evidence *held* not of a character to reduce the grade of the offense from murder to manslaughter.

*Appeal from Platte Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

*E. C. Hall, Roland Hughes*, and *Thos. J. Porter* for appellant; *J. W. Beebe* of counsel.

(1) The jurors, J. H. Carson, Milton Park, R. T. Murry, Henry E. Williams, J. T. Price, John Woolston, D. B. Higgins, and William J. Large were not qualified jurors, and the court committed error in disallowing defendant's challenge to said jurors. *State v. Cullen*, 82 Mo. 623; *State v. Walton*, 74 Mo. 270; *State v. Bryant*, 90 Mo. loc. cit. 279; *State v. Robinson*, 117 Mo. loc. cit. 659 and 660. (2) It was error for the court to command the panel of forty to disperse and go to their homes from the twenty-third day of April till the twenty-seventh day of April. It is quite as important to defendant to keep the panel of forty together, and away from improper influences, as the panel of twelve after they are selected. (3) It was error to exclude proof of communicated threats made against Wat Reed. Defendant had the right to be judged by the appearances as they presented themselves to his mind and to repel the inference that may have been drawn from his carrying a deadly weapon. (4) The case was tried by the state upon the theory that the defendant shot and killed deceased in defense of, or in repelling an assault upon, or to prevent an impending danger to John A. Cross who was his attorney engaged

in arguing his case, and not in defense of himself or his brother, Dan.   Conceding that the jury might find this to be true, from the conflicting testimony, defendant asked the court to give instructions numbers 15, 19, 20, 21 as declaring the law, if they should so find, all of which was refused.   And defendant excepted to the failure of the court to instruct "upon the law arising in the case, if the jury should find the fact to be that defendant acted in the defense of John Cross instead of his brother, Dan Reed."   In the case of *Kemp v. State*, 11 Tex. App. 174 and same case 13 Tex. App. 561, the court had occasion to consider how far one might lawfully interfere in a combat between others (strangers) and ultimately take life of one combatant to save injury to the other, and in that case the court said "Whatever one may lawfully do in the defense of his own life or person the law permits him to do to protect the life or person of another."   *Kemp v. State*, 11 Tex. App. 174; s. c., 13 Tex. App. 561.   "In the first place, in the progress of the difficulty (between Bogan and Smith), Smith made an attack upon Bogan, with intent to murder or maim him, or with intent to inflict serious bodily injury upon him, the defendant was justifiable in interfering for Bogan's protection even to the extent of killing Smith at once, if it reasonably appeared by the acts of Smith, etc., * * * it was the purpose of Smith to inflict such injury."   *Id.*, page 566, par. 8; 1 Barbour's Crim. Law, pp. 60, 61; *People v. Cole*, 4 Park. Cr. Rep. (N. Y.) 35; *Glover v. State*, 33 Tex. 224; *Mallicoat v. Com.*, 28 S. W. Rep. 151; Brace 145; 1 Hale, 4481; 4 Pa. Law Journal, 155; Wharton on Homicide, 36, 211; 1 Bishop, Crim. Law [7 Ed.], sec. 877 and notes.   (5)   In the eighth instruction for state the court in defining what would justify defendant, says, "If defendant had reasonable cause to apprehend and did apprehend," etc.   On the other hand

it is not enough that defendant should have so believed. He must have had cause to so believe, etc. But suppose the jury should find (as they might very well have found in this case), that defendant did so believe at the time of shooting, but that he did not have reasonable ground or cause to so believe. In that case the jury were left without instruction. If the jury found the two concurring, then they were told defendant was not guilty of any offense. If they found only the first he would be guilty of manslaughter, and not murder, and the court ought to have so instructed. The defendant excepted to the failure of the court to do so. *Fain v. Com.*, 78 Ky. 183; Wharton's Crim. Law [8 Ed.], sec. 488; *State v. Harrell*, 97 Mo. 110; 1 Bishop, Crim. Law [7 Ed.], sec. 305 and notes; *Id.*, sec. 874.

*R. F. Walker*, attorney-general, *Morton Jourdan*, assistant attorney-general, *F. M. Wilson*, prosecuting attorney, *R. P. C. Wilson*, *M. B. Riley*, and *J. W. Coburn*, for the state.

(1) The trial court was entitled to know the reason for the objection or challenge and defendant having failed to inform the trial court is precluded from a review of that challenge in this court. *State v. Taylor*, 134 Mo. 109; *People v. Reynolds*, 16 Cal. 128; *Mann v. Glonce*, 14 N. J. Law 195; *Powers v. Presgroves*, 38 Miss. 227; *S. Pac. Co.*, 1 C. C. A. 416; *Drake v. State*, 20 Atl. Rep. 747; 2 Elliott, Genl. Practice, sec. 530. (2) The instructions given in the case were full, complete, and exceedingly liberal to the defendant. Instruction number 17 as to the dying declarations of the deceased was rightly refused. It singles out and attempts to comment upon the testimony and fails to tell the jury what weight these declarations were entitled to. It was not proper in form, and while telling

State v. Reed.

the jury that it would not be entitled to the same weight as the witnesses' testimony, left them to conjecture and to guess how they should consider and what weight they should give them. *State v. Sivills*, 105 Mo. 530; sec. 4220, R. S. 1889; *State v. Bell*, 70 Mo. 633; *State v. Harris*, 59 Mo. 556. (3) Instructions numbers 15, 20, and 21 relate to the assault of Winn upon attorney Cross, and were properly refused, for: *First.* The defendant had no right in the defense of Cross to shoot and kill the deceased; *second*, there was not a particle of testimony that he shot the deceased either to prevent an assault upon Cross or in his defense. The defendant testified positively that he shot and killed the deceased in the necessary defense of his brother, Dan Reed. He does not intimate or suggest that he fired either shot in the defense of Cross, and hence there was not an iota of testimony upon which to predicate this instruction. It is a well settled principle of law in this state that no instructions should ever be given either in a civil or a criminal case which is not authorized and supported, warranted and built upon the testimony. *State v. Parker*, 106 Mo. 225; *State v. Bulling*, 105 Mo. 220; *State v. McKinzie*, 102 Mo. 620; *State v. Herrell*, 97 Mo. 106; *State v. Chambers*, 87 Mo. 406. (4) The giving of these instructions would have been inconsistent with the defense of the defendant; they would have been in contradiction of his positive declarations upon the witness stand. This case was presented to the jury by defendant upon the theory of a justified killing in the defense of no one except Dan Reed, defendant's brother. It should be tried in this court upon the same theory, and the defendant should not be heard to complain of the failure of the court to give these instructions, which are in violent opposition to the theory presented below. *Stone*

*v. Hunt*, 114 Mo. 66; *Yarnell v. Railroad*, 113 Mo. 570.
(5) An instruction as to manslaughter in the fourth
degree was properly refused.    There was no testimony
that it was an involuntary killing; but, on the other
hand, all of the testimony was to the effect that it was
an intentional killing; hence, it is not included in sec-
tion 3476, Revised Statutes, 1889.    *State v. McKinzie*,
102 Mo. 621; *State v. Pettit*, 119 Mo. 410.

BURGESS, J.—At the August term, 1895, of the
circuit court of Platte county the defendant was indict-
ed for murder in the first degree, for having at said
county on the sixteenth day of August, 1895, shot to
death with a pistol one James Newton Winn.

Judge Herndon of the Platte circuit on being dis-
qualified to try the case called Judge W. W. Rucker of
the twelfth circuit, before whom the case was tried at
the April term, 1896, of said circuit court, resulting in
the conviction of defendant for murder in the second
degree, and the fixing of his punishment at imprison-
ment in the penitentiary for the term of ninety-nine
years.    Defendant appealed.

The homicide was committed in the courthouse at
Platte City while the circuit court was engaged in the
trial of a case of replevin involving the title and pos-
session to some hogs, in which Winn, the deceased,
was plaintiff, and the defendant herein was defendant.

There had been bad blood existing between the
parties for many months, and while Cross, one of de-
fendant's attorneys engaged in the trial of that case,
was addressing the jury, he severely criticised Berry
Winn, the son of deceased, who had testified in his
father's behalf, and charged him with having been
controlled and directed while on the witness stand by
telegraphic communications from his father's eyes.
Cross proceeded to remark in substance: "I have

raised five sons, whom I have endeavored to bring up to be honorable men, and not for all the wealth of both these litigants would I have one of them go on the witness stand and make such a spectacle of himself as that made by young Berry Winn."

About the time that Cross was concluding his criticism on the witness, Winn, deceased, who was sitting near Cross, arose to his feet and advanced toward him in an angry manner placing his left hand violently on Cross's left shoulder and at the same time striking at his head with his right. At the time of the assault upon Cross, defendant, who had been sitting ten or twelve feet from Cross, and to his left, arose, drew his pistol, and fired three shots at deceased, two of them taking effect in the body, the first and fatal shot being fired almost simultaneously with the assault by deceased on Cross.

When the first shot was fired deceased released his hold on Cross, clasped his abdomen, and partially turned from defendant, in which position he was when the second and third shots were fired. Deceased died the night after the shooting from the effects of the shots received by him.

1. The first point insisted upon by defendant for a reversal of the judgment is the action of the court in retaining upon the panel of forty jurors one W. J. Large, over the objection and exception of defendant.

This juror was selected as one of the twelve quali-- fied jurors, before whom the trial was had. When questioned on his *voir dire* touching his qualifications as a juror, he stated that he had formed an opinion from rumor, and from reading newspaper accounts of the tragedy, as to the guilt or innocence of the defendant which would require evidence to remove, and if such rumors were not contradicted by evidence, that the opinion which he had formed therefrom would be

bound to have some influence upon him in arriving at a verdict. He subsequently and before being finally accepted on the panel of forty, was asked by the court if he could give the defendant a fair and impartial trial, as well as the state, and acquit him unless the evidence warranted a different verdict, which he impliedly, at least, answered in the affirmative.

It is well settled in this state that a person otherwise qualified to sit as a juror in a criminal case, is not disqualified by reason of having formed an opinion as to the guilt or innocence of the accused from reading partial newspaper accounts of the homicide, or from rumor, when he states on his *voir dire* that he can give the defendant under indictment for the offense a fair and impartial trial.    *State v. Taylor*, 134 Mo. 109.

Moreover, the ground of objection to the juror was general, which was simply the statement of a legal conclusion, and really did not amount to an objection. We take the following from *State v. Taylor, supra, loc. cit.* 142, 143:

"Now, nothing is better settled than that challenges for cause must be *specifically* stated. The particular cause must be set forth. *People v. Reynolds*, 16 Cal. 128; *Mann v. Glover*, 14 N. J. L. 195; *Powers v. Presgroves*, 38 Miss. 227; *Southern Pac. Co. v. Rauh*, 49 Fed. Rep. 696; *Drake v. State*, 20 Atl. Rep. 747; 2 Elliott's Gen. Prac., sec. 530, and other cases there cited. * * * Indeed, there seem to be more cogent reasons why specific objections should be urged in a case of this sort, where the question is as to the admission of a juryman, than where it is as to the admission of a piece of evidence. At any rate, in either case, fairness to the court and to adverse counsel alike demands the grounds of the challenge for cause to be particularly set forth."

2.  After all of the evidence in chief on the part of the state had been introduced and the defense had concluded its evidence, the state was permitted to read in evidence, over the objection and exception of defendant, a part of the dying declaration of deceased Winn, which is as follows:

"At the time I was shot by Watson Reed I was unarmed, I had no knife in my hand at the time and made no demonstration with a knife or any other weapon.  I was not watching or thinking about Wat. Reed at the time he shot me.  I did not see him shoot the first shot but saw him shoot the second.

"I realize that my death is imminent, and near at hand, and I have no hope of recovery, and make this as my dying statement.

"J. N. WINN."

The preliminary proof showed beyond any question that the declaration was made by the declarant in the anticipation of immediate dissolution, and after all hope of recovery had vanished.  In this particular every prerequisite required by law was complied with.  The evidence was full, ample, and complete.

3.  But it is insisted that the declaration was improperly admitted for other grounds which were stated at the time it was offered in evidence, the first of which is, that "there was no proof of the declarant's state of mind at the time he made the statement," and this was prerequisite to its admission.

We have been cited to a single authority which seems to support such contention (*Tracy v. People*, 97 Ill. 105), and that we think a departure from the generally accepted doctrine.  We can conceive of no reason why such a condition should be imposed, and if it may be done with respect to statements made by a deceased person, there is no apparent reason why the same rule should not apply to all witnesses introduced on the part

of the state. That case, however, turned in a large measure upon the use of profane language by declarant at the time the dying declarations were made, which seems to have been construed by the court as showing that he was not at the time in the possession of his mental faculties. We do not think that decision in harmony with the law as generally laid down in the reports and text-books upon the subject.

Should it appear from the evidence adduced when such declarations are offered in evidence, that at the time they were made the declarant was not in the possession of his mental faculties, a different rule would prevail, but we are unwilling to say that, before such declarations can be received in evidence when otherwise admissible, it must be shown as a condition precedent that the declarant was in the possession of his mental faculties at the time he made them.

The rule is that, "in a prosecution for murder the offer of dying declarations should be preceded by evidence that they were actually made in expectation of impending death." 6 Am. and Eng. Ency. of Law, 127. "The ascertainment of the primary facts is for the court. The judicial mind must be satisfied, and, when satisfied that the requisite predicate is established, the duty to receive the evidence is imperative." *Ibid.*, 128.

4. There was no reversible error committed in permitting the state to read in evidence the dying declaration, after the defense had closed its case. This was a matter resting in the sound discretion of the court, and that discretion does not seem to have been abused in this instance. Under such circumstances this court will not interfere.

5. Another insistence is, that the statements that declarant did not see the defendant when he fired the first shot; that he was not thinking of Watson Reed

at the time, and that he was unarmed, were improperly admitted.

Dying "declarations are regarded in the light of hearsay testimony, and as admissible only from the necessity of the case and to prevent a failure of justice, and are, therefore, properly restricted to the identification of the prisoner and the deceased, and to the act of killing and the circumstances immediately attending said act and forming a part of the *res gestae.*" *State v. Vansant*, 80 Mo. 67. See Wharton, Crim. Ev. [9 Ed.], sec. 278; *Collins v. Commonwealth*, 12 Bush. 271; *State v. Wood*, 53 Vt. 560; *Leiber v. Commonwealth*, 9 Bush. 13.

But such evidence is not inadmissible because of the introduction of other evidence tending to establish the same facts; it is admissible on the presumption that no other equally satisfactory evidence can be obtained. *Payne v. State*, 61 Miss. 161; *Battle v. State*, 74 Ga. 101; *Curtis v. State*, 14 Lea. 502.

The fact that deceased did not see defendant at the time he fired the first shot, and the further fact that he was not armed and had no knife at that time were statements that a witness on the stand would have been allowed to make. And "the cases all agree that dying declarations are admissible in a case where the evidence would be competent if the declarant were on the witness stand." *Boyle v. State*, 105 Ind. *loc. cit.* 472. They were statements of facts, and clearly admissible under all of the authorities. *State v. Nocton*, 121 Mo. 537; *Wroe v. State*, 20 Ohio St. 460; *Roberts v. State*, 5 Tex. App. 141; Wharton Crim. Ev. [9 Ed.], sec. 294; *People v. Abbott*, 4 W. C. Rep. 132; *State v. Nettlebush*, 20 Iowa, 257; *Brotherton v. People*, 75 N. Y. 159; *People v. Fong Ah Sing*, 5 Crim. Law Mag. 64.

The fact that deceased was not thinking of his assailant at the time he was shot, was immaterial and

incompetent, and should not have been permitted to go to the jury, but it does not necessarily follow that the judgment should be reversed upon that ground alone.

The defense was, that the first shot was fired in the defense of defendant's brother Dan Reed, and the other two in defense of himself. Defendant testified that, while Cross was addressing the jury in the case on trial at the time of the homicide, the deceased commenced shaking his head, was mad, that he ran his hand into his right pocket and opened a knife, and leaned toward Mr. Cross; that he made a motion to get up, and did get up and went very viciously at Mr. Cross, and struck him with his left hand maybe two or three times, and then with his right hand, that the right hand passed over Mr. Cross's right shoulder; that his brother Dan Reed who was sitting near by jumped up and grabbed Winn by the left shoulder and together with both hands, and cried for peace; he said, "You, Newt, that wont do," and at that instant Winn turned to his brother, and as he came up from behind them, he saw that his brother was in danger; that he thought that Winn had plunged the knife into him, and moved Winn with one hand and shot him with the other, and at that instant Winn threw his hands to his right side, looked him right in the face, when he shot him twice more; that he fired the first shot in defense of his brother, because he saw and knew he was in danger, and the other two in defense of himself.

Under this statement of the facts with respect to the homicide, detailed by defendant himself while testifying as a witness in his own behalf, there was no self-defense in the case, and we are unable to see how he could have been prejudiced by a statement of so little consequence which had reference to himself. *State v.*

*Gilmore*, 95 Mo. 554; *State v. Bryant*, 102 Mo. 24; *State v. Nocton*, *supra*.

6. As there was no evidence even tending to show that defendant shot Winn in self-defense, no error was committed in refusing to permit defendant to introduce evidence of threats of violence made by Winn against him. The authorities to which our attention has been called upon this question go no farther than to hold that threats of violence are admissible upon the part of a defendant on trial for murder when the homicide was committed in defense of his own person, or when made against the person in whose defense the homicide was committed. This we understand to be well settled law, and the action of the court in excluding the proffered evidence was in accordance therewith.

7. It is said in behalf of defendant that the defense proposed to show that the deceased was a desperate and dangerous man, and that the court would not permit him to do so, but this seems to be a misconception of the ruling of the court on this question, as shown by an examination of the record.

8. It is claimed by defendant that error was committed in rejecting evidence offered by him of threats made by deceased against him and Cross, but this evidence was properly excluded for the very obvious reason, that defendant did not pretend that the homicide was committed in defense of Cross, and, as to defendant, because there was no self-defense in the case.

Nor was there error committed in permitting the state to prove that on Tuesday preceding the killing on Friday Winn left his pistol in the bank at Platte City. It was a circumstance tending to show that deceased had no pistol on his person at the time of the homicide, which was a question for the consideration of the jury.

9. The court refused instructions asked by defendant to the effect that, if the deceased made a vio-

lent attack upon Cross with a knife, which was a deadly weapon, in the presence of defendant, and that by reason of the violence of the assault and other circumstances, defendant had reasonable grounds to believe that a felony was about to be committed, and in good faith fired the fatal shot to prevent it, they would find him not guilty. In refusing to instruct the jury as requested upon this theory of the case, defendant insists that error was committed to his prejudice.

That the law will justify the taking of human life, when necessary, to prevent the commission of a felony, seems to be well settled. *State v. Rutherford*, 1 Hawks. 457; *Ruloff v. People*, 45 N. Y. 213; *Dill v. State*, 25 Ala. 15; *Oliver v. State*, 17 Ala. 587; *Commonwealth v. Riley*, Thach. Cr. Cas. (Mass.) 471; *Pond v. People*, 8 Mich. 150.

To justify the taking of life under such circumstances, there must be reasonable grounds to believe that a felony is about to be committed. *State v. Rutherford, supra; Keener v. State*, 18 Ga. 194; *Pond v. People, supra; Stoneman v. Commonwealth*, 25 Gratt. 887.

But there were no facts upon which to base such instructions. According to defendant's own statements, he did not fire the fatal shot in order to prevent the commission of a felonious assault upon Cross, but fired it to prevent a felonious assault upon his brother, and fired the two following shots in self-defense. No one knew defendant's purpose in shooting Winn, so well as he did himself, and he was not entitled to an instruction utterly inconsistent with his own evidence, as to that purpose.

10. It is also insisted by defendant that the court erred in refusing the following instruction asked by him with respect to the dying declaration, to wit:

"The jury are instructed that while the dying declaration of the deceased is for your consideration

together with all the other facts and circumstances in evidence, yet such declarations are not entitled to the same weight, as would be his testimony if he were a a witness testifying in court."

In passing upon a similar question in *State v. McCanon*, 51 Mo. 160, it was said: "The court had no right to comment upon the evidence. Its only province was to determine its admissibility, and then leave the credit or weight which should be attached to it, to the jury." That case was approved in *State v. Vansant*, 80 Mo. 67. The same rule is announced in *Campbell v. State*, 38 Ark. 498; *Walker v. State*, 37 Texas, 366; *Donnelly v. State*, 2 Dutch. (N. J.) 463; *Doles v. State*, 97 Ind. 555; *Commonwealth v. Casey*, 11 Cush. (Mass.) 417.

Mr. Bishop says: "Judges have sometimes attempted a comparison between these declarations and the testimony of living witnesses as to the weight which the jury should accord them. But evidently such comparisons are impossible; or, at least, they pertain to the facts of a case, not to the law. Like other evidence, they are open to observation; but the jury alone are to decide on their effect, giving them such weight as may seem to them, under all the circumstances, to be just." 1 Bishop, Crim. Proc. [3 Ed.], sec. 1216.

It follows that the instruction was properly refused because a comment on the evidence.

11. The court instructed for murder in the first and second degrees only, and after it had passed upon the instructions counsel for defendant called its attention to the fact that it had failed to instruct for manslaughter in the third and fourth degrees, and excepted to the court's failure to so do. It is now urged that the court erred in refusing to instruct for manslaughter in the fourth degree.

As the fatal shooting of Winn by defendant was not for the purpose of protecting Cross from the assault by Winn, in order to reduce the homicide to manslaughter in the fourth degree there must have been some lawful provocation offered to his brother, Dan Reed, or that defendant had good reason to believe that Winn was committing or about to commit a felonious assault upon him, for it is plain from the evidence that there was no such provocation offered to defendant. Therefore, in order to reduce the offense to the lower grade of homicide, there must have been some personal violence by deceased toward Dan Reed.

In *State v. Starr*, 38 Mo. 277, it was said: "Where there is lawful provocation, the law, out of indulgence to human frailty, will reduce the killing from the crime of murder to manslaughter; but neither words of reproach, howsoever grievous, nor indecent provoking actions or gestures, however much calculated to excite indignation or arouse the passions, are sufficient to free the party killing from the guilt of murder. To have the effect to reduce the guilt of killing to the lower grade, the provocation must consist of personal violence. * * * There must be an assault upon the person, as where the provocation was by pulling the nose, purposely jostling the slayer aside in the highway * * * or other direct and actual battery." See, also, *State v. Branstetter*, 65 Mo. 149.

We recognize the right of defendant to do in defense of his brother whatever his brother may have done in defense of himself, and, if necessary to protect him from a felonious assault, to slay the person assaulting him, but the law will not justify him in doing anything more.

Deceased made no assault upon Dan Reed; the assault made by him was upon Cross, and whatever Dan Reed did, was for the protection of Cross, and not

for his own protection.   While Dan Reed might have been justifiable in killing Winn in the defense of Cross, if the assault upon Cross was felonious, and he had good reason to believe, and did believe, that Cross's life was in danger and that it was necessary to do so in order to protect him from impending death or great bodily harm, he would have had no right to kill Winn in defense of his own person, because Winn was not assaulting him, nor attempting to do so at the time he was shot.   The act of Dan Reed in taking hold of Winn was voluntary upon his part, and in the absence of a felonious attack upon him thereafter by Winn, he would not have been justifiable in taking his life, nor would the killing of Winn by him under such circumstances reduce the offense to manslaughter.

Defendant was present and witnessed the difficulty from its inception; he could not have been deceived as to what occurred between the parties engaged; there was no assault upon Dan Reed or himself by Winn; he shot Winn twice after he had received the deadly shot at his hands, and after he had released his hold upon Cross and was sinking to the floor of the court room where the shooting occurred.   There was nothing to reduce the offense to manslaughter in any degree; hence no error in refusing to so instruct the jury.

The instructions covered every phase of the case warranted by the evidence, and were exceedingly fair to defendant.   No instruction should have been given upon self-defense, but that was an error in favor of defendant of which he has no right to complain.

Finding no reversible error in the record the judgment is affirmed.   All of this division concur.