THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY WARREN, Plaintiff in Error.

*Opinion filed June 18, 1913.*

1. CRIMINAL LAW—*what shows that the declarant believed his death was impending.* Proof that the injured person accepted his physician's opinion that his wound would be fatal and that he believed he would not live even an hour and a half, justifies the admission of his statement in evidence as a dying declaration even though he lived several days, during which time there was no hope of his recovery.

2. SAME—*what evidence is admissible though of a harrowing nature.* As bearing upon the question of the condition of the injured person at the time his statement, offered in evidence as a dying declaration, was made, it is not improper to permit a witness to state that as she raised him up to fan him the blood gushed out over her dress.

3. SAME—*when instruction is erroneous in assuming that the bullet fired by the accused killed the deceased.* Where there is evidence in the record in a murder trial tending to show that other shots than those fired by the accused were fired and that the deceased was in a position where he might have been in range of such shots, it is error to give an instruction which assumes that it was a bullet fired by the accused which inflicted the mortal wound.

4. SAME—*dying declaration is not entitled to same weight as though made under oath.* A statement which is admissible under the rules concerning dying declarations is competent to the same extent as if made under the sanction of an oath, but it is error to instruct the jury that it is entitled to the *same weight* as if made under the sanction of an oath. (*Nordgren* v. *People,* 211 Ill. 425, followed; *Barnett* v. *People,* 54 id. 325, overruled.)

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. ALBERT M. ROSE, Judge, presiding.

J. J. BUNDY, and KAGY & VANDERVORT, for plaintiff in error.

P. J. LUCEY, Attorney General, SAMUEL N. FINN, State's Attorney, and GEORGE P. RAMSEY, (CHARLES HOLT, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error was indicted for murder and convicted of manslaughter. He insists that the verdict was not sustained by the evidence, and that the court erred in admitting and rejecting evidence and in giving and refusing instructions. The evidence is conflicting, and we shall not discuss its weight since the judgment must be reversed for errors occurring on the trial.

The deceased, Arthur Greenlee, was shot in the yards of the Illinois Central Railroad Company at Centralia on the morning of August 23, 1912, soon after midnight, and died three days later. The plaintiff in error was employed by the railroad company as a watchman in the yards. He met the deceased, in company with two or three other young men, walking north along the tracks through the yards and accosted them. His testimony was, that he asked them where they were going and turned on them a flash-light which he carried; that two of them drew revolvers and one started off the tracks to the east and the others to the west; that the man going east shot at him twice, and he thereupon drew his revolver and fired five shots in the direction of the flash of the last shot fired at him, without seeing the man. At his last shot, shots were fired at him from the west side of the track, the bullets singing past close to him. The flash at which he had fired was in range of these bullets. The defendant then started to run but stumbled in a ditch and fell down. James Greenlee, the deceased's brother, and James Bain, a young man who was with them, testified that the three were walking north on the railroad track when they met the plaintiff in error, who spoke to the deceased and asked what he had on him. The deceased started to run, and the plaintiff in error drew a flash-light and a revolver and began shooting at the deceased. The other two men ran north, and after the shooting was over found the deceased, who had received a gunshot wound in the back. The plaintiff in error remained on

duty in the railroad yards until six o'clock, when he went home and to bed until noon, and upon getting up first learned from the chief of police that a man had been shot.

On the trial James Greenlee testified that "he started and pulled his gun, Mr. Warren did, or this fellow; I suppose it was Mr. Warren." This testimony was stricken out, but the witness was permitted, over objection, to state that he afterward learned that the man who started to draw a gun was Harry Warren. This was improper but it did no harm, for there was no controversy as to who were present there on the tracks, except as to whether there were three men or four with the deceased. Objections were sustained to several questions asked this witness on cross-examination. They were all immaterial to the merits and of no special importance as tests of credibility in any way, and the court did not err in the exercise of his discretion in excluding them.

After the deceased was found by his brother and James Bain he was taken to the house of Mrs. Shiplor and a surgeon was summoned who examined and treated him, being at the house several hours. After he had gone the deceased had a conversation with Mrs. Shiplor in which he gave an account of the circumstances of the shooting, and this and later statements of the deceased were offered as dying declarations and over objection were submitted to the jury. It is insisted that there was not sufficient proof that the deceased believed that death was imminent and that he had no hope of recovery. Dr. Foster, the physician, testified that on his first visit he told the deceased that he feared he was fatally injured and would never get well; that the injury was over vital organs and he was afraid it was going to be fatal. In response to the deceased's question whether he thought he (the deceased) could live until his parents got there, the doctor answered that he believed he could. The deceased's mind was clear and he realized what the doctor was telling him. After the doctor was gone the deceased inquired of Mrs. Shiplor how long it was until train time,

and on being told about an hour and a half, said, "I cannot stand it; I cannot live." Again, he inquired if Mrs. Shiplor thought the train would be on time, and when she could not tell he said, "Mama won't get here." When Mrs. Shiplor said, "Yes, you are going to live all right," he said: "No, I cannot; I am too near gone; I am killed." He inquired again about the train, and to her encouraging remark that he was all right, answered: "No, I am killed; I cannot live; I cannot breathe, you see." Then he made the statement offered in evidence. From the first he accepted the doctor's statement as to the probable fatal end of his wound. His only hope was to live to see his parents. In fact he lived from Friday morning until Monday morning, but there was no hope of his recovery at any time. The evidence shows that he expected death almost immediately, and was sufficient to justify the admission of his statements as dying declarations.

Mrs. Shiplor testified to raising the deceased up and the blood gushing out over her dress while she held him and fanned him, and it is objected that the dramatic character of her evidence was calculated to inflame the minds of the jury and arouse their passions. It was essential to show the actual physical condition of the deceased, his condition of mind and what he thought of his condition, and the circumstances testified to were competent for these purposes. The fact that the circumstances attending events which are competent to be given in evidence may tend to harrow the feelings or arouse the sympathies does not justify their exclusion.

James Greenlee, when cross-examined by counsel for the plaintiff in error, denied that he had been in a lunch room on North Oak street with his brother and James Bain about half-after eleven on the night in question, and that they tried to buy cartridges then or asked for beer with their lunch. Lottie Hochshaw, a witness produced by the defense, testified that they were in the restaurant and got

some sandwiches about half-after ten, and questions were then asked calculated to elicit answers that they had asked for drinks and tried to buy cartridges. It was not attempted to show that they had got any drinks or any cartridges, and objections to the questions were properly sustained.

The court gave to the jury five instructions on the subject of reasonable doubt, covering two pages of the abstract, containing, in varying language, statements of the law on the subject which have been approved in various decisions, all tending to minimize the force of the rule of law requiring the proof which will justify a conviction of crime to be beyond a reasonable doubt. A treatise of two pages on the subject of reasonable doubt tends rather to confuse than enlighten and should not be given to the jury. This judgment, however, is not to be reversed for the giving of these instructions.

An instruction was given on the subject of self-defense, as follows:

"The jury are further instructed that before the defendant, Harry Warren, can avail himself of the right of self-defense it must appear that at the time of the killing the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm the killing of the deceased, Arthur Greenlee, was necessary, or apparently necessary, and it must also appear that the deceased, Arthur Greenlee, was the assailant, or that the defendant, Harry Warren, had in good faith endeavored to decline any further struggle before the mortal shot was fired."

This instruction was erroneous in assuming that the killing of the deceased was the act of the plaintiff in error. There was testimony that other shots were fired than those fired by the plaintiff in error; that shots were fired from the west at him, and it may be inferred from the evidence that the deceased was in range of these latter shots. The plaintiff in error should not have been foreclosed from presenting to the jury the question whether it was shown that

his bullet killed the deceased, as was done by the assumption in the instruction that the killing was by plaintiff in error.

The sixteenth instruction was as follows:

"The court instructs the jury that if you believe, from the evidence, that the deceased, Arthur Greenlee, was of sound mind and was fully impressed of the belief that he would die in a short time and was without hope of recovery, and that he, while in such frame of mind, made declarations and statements, then such declarations and statements would be entitled to the same weight as if they had been made under the sanction of an oath."

This was erroneous. The weight to be given to the statements was for the jury to say. They were competent to the same extent as if made under the sanction of an oath, from necessity. The instruction is misleading because it seems to say that the statements are entitled to the same weight as if the declarant had testified to them as a witness, and this is not the law. (*Nordgren* v. *People,* 211 Ill. 425.) This instruction was approved in *Barnett* v. *People,* 54 Ill. 325, but we regard that decision as inconsistent with the rule in the *Nordgren case* and as overruled to the extent that it approves this instruction.

The plaintiff in error complains of the modification of some of his instructions and the refusal of others. He has been acquitted of murder. The substance of some of the instructions refused was contained in others which were given, and the objections made to others will no doubt be obviated on another trial. It is unnecessary to consider these objections in detail.

For the errors indicated the judgment will be reversed and the cause remanded.        *Reversed and remanded.*