(No. 1636, May 13, 1914)

STATE OF NEW MEXICO, Appellee, vs. ANTONIO VALENCIA, Appellant.

### SYLLABUS BY THE COURT.

1. Dying declarations, being in their nature secondary evidences and subject to many infirmaties, are not ordinarily entitled to the same weight or credence as living witnesses under oath and subject to cross examination, the question of weight being one for the jury, and, it is error to instruct the jury that such evidence is of no more weight than if the deceased was present and testifying, because such instruction is calculated to lead the jury to consider that dying declarations are entitled to the same weight as the testimony of living witnesses under oath and subject to cross examination.

P. 117

Appeal from District Court, Eddy County; Colin Neblett, Presiding Judge. Reversed and Remanded.

ROBERT C. DOW and GUY A. REED, for Appellant.

Error in Giving Improper Instruction. 53 L. R. A., p. 446; 56 L. R. A., p. 446; L. R. A. New S., p. 660; A. & Eng. Cyc. L., Vol. 11, 254.

H. S. CLANCY, for Appellee.

There is no bill of exceptions included in record. 15 N. M. 247; 131 Pac. 489.

## STATEMENT OF FACTS.

The appellant, Antonio Valencia, was tried for the murder of Simon Rodriguez, at the January term, 1913, of the district court for Eddy County, and found guilty of murder in the first degree.

## OPINION.

HANNA, J.—Several assignments of error are predicated upon the instructions of the court with respect to the dying declaration of deceased, and it becomes necessary to consider the instructions as a whole in passing upon the merits of appellant's contention. These instructions, numbered from 18 to 21, inclusive, are as follows:

"18. You are instructed that in prosecutions for murder the dying statement or declaration of the person with whose murder the accused stands charged, when material and made under the sense of impending death, is admissible in evidence. Such declaration is made when the party making it is at the point of death and when every hope of the world is gone and when every motive for falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth; the situation in law is considered as creating an obligation equal to that which is imposed by an oath administered in a court of justice.

"19. You are instructed that the declaration of Simon Rodriguez offered in evidence in this case through certain witnesses, was admitted under such a rule of law, but the truth or falsity of such declaration of Simon Rodriguez

and the degree of accuracy or inaccuracy in the recital thereof by the witnesses are matters for you to weigh under the same tests as apply to other witnesses, considering all of the circumstances in evidence surrounding each case and each witness.

"20. The court instructs the jury that the statement read to you as a dying declaration of Simon Rodriguez should be received by you as such declaration, but because it is a dying declaration you are not necessarily bound to believe it, but you will give it that weight which you think it ought to have when considered in connection with all the other facts and circumstances in evidence.

"21. A statement by one who has been shot respecting who it was that inflicted the wound and the circumstances under which the same was inflicted as a dying declaration, if made at a time when he did not expect to survive the injury, is of no more weight than if the deceased was present and testifying."

It is to be observed that the court in its final instruction, *supra*, told the jury that the dying declaration is of no more weight than if the deceased was present and testifying. It cannot be questioned that the great weight of authority, and the best opinion upon the subject, favor the rule that because the accused is deprived of an opportunity of investigating the truth of the statements contained in the dying declaration by means of cross examination; that the maker of the statement was, at the time it was made, under no apprehension of punishment for perjury; and the jury had no opportunity to observe the conduct and demeanor of the witness, such testimony is not to be considered on the same plane or of equal weight or value with that of a sworn witness giving evidence in the presence of the court and jury and under the scrutiny mentioned. Therefore, the only question for our consideration is whether the instruction referred to, taken in consideration with the other instructions upon the same subject, did attach undue importance to the dying declaration.

The instruction is somewhat out of the ordinary and

so far as we can find is based upon the supposed authority of an Arkansas·case, viz: Allen vs. State, 70 Ark. 337, 340. In this case, however, it is to be observed that the instruction was requested by appellant and it does not appear that any point was made, or could have been made, upon the apparent infirmity of the instruction.

The admission of evidence of this character is an exception to the rule of inadmissibility of hearsay testimony, and many reasons, other than those given, might be referred to as constituting proper and sufficient grounds for not giving to dying declarations the same force and effect as if the declarant had been a witness in court. These reasons are fully pointed out by Mr. Elliott in his work on Evidence, Vol. 1, Sec. 358. See also, State vs. Van Sant, 80 Mo. 67; State vs. Mathes, 90 Mo. 571; Lambeth vs. State, 23 Miss. 322; State vs. Eddon, 8 Wash. 292.

The last case cited is more nearly in point than any other we have found, or to which our attention has been called. Most, if not nearly all, of the cases examined have to do with instructions to the effect that the dying declaration was to be given the same weight as that of a sworn witness giving evidence in the presence of the court. See cases collected in note to Harper vs. State, 56 L. R. A. 372, at 446. While in the case now under consideration, the language used by the court was that the dying declaration "is of no more weight than if the deceased was present and testifying," and in the Eddon case, *supra,* the language adopted by the court was: "Dying declarations are to have no greater weight than if the deceased was alive and testified to the same facts upon the witness stand."

While it might be urged that there is a distinction between the words "the same weight" and "no more weight," or "no greater weight," we thing it must needs be a distinction without any serious merit. To the average juror the words "no more weight" would convey to the mind the impression that he was justified in attaching the same weight, or as much weight to the class of testimony in question as he would to a living witness present in court.

The serious infirmity about this class of evidence, i. e., dying declarations, is the lack of opportunity to investigate the truth of same by searching cross-examination. And it can well be urged that the passion of the moment, or the clouded mind resulting from the injury, not to say anything about the possible incorrect quoting of deceased by those depended upon to supply this evidence, would all tend to indicate the lurking evils of this class of testimony to which the jury is prone to attach great consideration, for which reasons instructions tending to point out the weight to be attached to such evidence are dangerous and calculated to be highly prejudicial to defendant.

As stated, dying declarations constitute one of the exceptions to the rule which rejects hearsay evidence, and are admissible because of the necessity of the case and the presumed sanctity given them by the sense of impending death, which must exist and which is said to create an obligation equal to that which is imposed by an oath administered in a court of justice.

We are of the opinion, however, that dying declarations, being in their nature secondary evidence and subject to many infirmities, are not ordinarily entitled to the same weight, or credence, as is the testimony of living witnesses under oath and subject to cross examination, the question of weight being one for the jury, and it is error to instruct the jury that such evidence is of no more weight than if the deceased was present and testifying, because such instruction is calculated to lead the jury to consider that dying declarations are entitled to the same weight as the testimony of living witnesses under oath, and subject to cross examination.

In the present case much depended upon the dying declaration, which received but little and perhaps questionable corroboration, so that we feel constrained to reverse the case upon the ground mentioned, and to remand same for a new trial, and, it is so ordered.