(No. 2751, March 13, 1923.)

## STATE v. GALLEGOS

### SYLLABUS BY THE COURT

(1) A person whose dying declarations are admitted in evi-
dence is subject to impeachment in the same manner as other
witnesses. Under this rule such person may be impeached by
evidence that he bore a bad reputation for morality.   P. 404

(2) An instruction which leads the jury to believe that dy-
ing declarations are entitled to the same weight and credence
as testimony of living witnesses who personally appear and
testify and are subjected to cross-examination is erroneous.
                                                        P. 406

(3) An instruction which informs the jury that dying dec-
larations are not entitled to the same weight as other evidence
given by living witnesses is properly refused, as to give the
same would constitute a comment upon the evidence; it
being the province of the court to determine the admissibility
of such evidence and exclusively for the jury to determine
its weight.                                             P. 408

(4) It is necessary in laying a proper foundation for the ad-
missibility of character testimony to show that the witnesses
from whom such evidence is elicited were acquainted with
the people residing in the community of the deceased, whose
character was in question, and that the time inquired about
be limited to that prior to the homicide.              P. 409

Appeal from District Court, Union County; Leib, Judge.

Salome Gallegos was convicted of murder in the second degree, and he appeals. Reversed and remanded.

O. P. Easterwood, of Clayton, for appellant.

H. S. Bowman, Atty Gen., and E. M. Edwards, Asst. Atty. Gen., for the State.

### OPINION OF THE COURT

BRATTON, J. Appellant was indicted for the murder of one Lucas Cruz. He was found guilty of murder in the second degree and sentenced to serve a term in the penitentiary of not less than 15 nor more than 20 years. Feeling aggrieved, he has perfected this appeal.

[1] The state proved, as a part of its case in chief, a dying declaration made by the deceased, in which he detailed the facts and circumstances surrounding the homicide. Following this, the appellant sought to prove as a part of his defense that the deceased bore a bad reputation in the community in he which lived for morality. This the trial court excluded as being immaterial, and such action is here urged as reversible error. Section 2180, Code 1915, expressly authorizes proof of bad moral character to impeach an adverse witness. Said section provides:

"The credit of a witness may be impeached by general evidence of bad moral character not restricted to his reputation for truth and veracity; but a party producing a witness shall not be allowed to impeach his credit by general evidence of bad moral character, but in case the witness, in the opinion of the judge, proves adverse, such party may prove that the witness made at other times a statement inconsistant with his present testimony; but before such last mentioned proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he did make such statement."

This statute has been construed by this court to authorize proof of such reputation to impeach an adverse witness and held it to be reversible error to exclude the same. State v. Perkins, 21 N. M. 135, 153 Pac. 258. Under the provisions of this statute as thus construed, if the facts stated by the deceased had been testified to by some bystander who saw and witnessed the fatal difficulty in question, general evidence of his bad moral character would have been admissable to impeach him; that is, to weaken the force and destroy the effect of such testimony. We think the same rule applies to a person whose statements concerning the facts and circumstances surrounding the difficulty are admitted as dying declarations. They are but part of the evidence in the case, and may be discredited in the same manner as if the witness were present and testifying thereto; the declarant is open to the same attacks as if personally present and testifying, and the same procedure to impeach may be adopted. To otherwise express it, such declarant is none the less immune from such impeachment in the legal and statutory way than a living person who personally testifies under oath. The declarations of the deceased having been admitted in evidence, appellant was entitled to impeach him, in such manner, for the purpose of enabling the jury to give his statements such weight and credit as they were entitled to receive. The law could not well be otherwise in view of the strong tendency of jurors to give serious consideration and great weight to dying declarations so admitted in evidence.

"The dying declaration being in effect a testimonial statement, made out of court (ante No. 1424), the declarant is open to impeachment and discrediting in the same way as other witnesses (ante No. 885), so far as such process is feasible." 2 Wigmore on Evidence, p. 1813, § 1446.

"The dying declaration may be discredited by any testimony which would be permissible to discredit the testimony of the declarant, were he in court testifying." 1 R. C. L. p. 549, § 97.

"The same tests to determine their trustworthiness are applicable to the statements of persons in extremis, as are applied to the statements of a witness under examination on

oath. The declarations are to be admitted, if they are relevant, and where irrelevant the jury may be directed to disregard them.

"To affect their credibility it is competent to show feelings of hostility on the part of the declarant toward the accused, to show the condition of his mind subsequent to the declarations, to show his want of religious belief, to prove his bad character, and to prove contradictory and conflicting statements.

"Many early cases hold that dying declarations cannot be impeached by contradictory statements, because it is a violation of that rule of evidence that requires, as a foundation for impeachment by contradictory statements, that on cross-examination, witness' attention must be called to the matter, and he must be asked whether he has or has not made the statement. To this it is replied that necessity governs the admission of such declarations, and a like necessity governs the admission of the contradictions of the same; that if public policy demands the admission of the declarations to advance public justice, the like policy must be exercised in favor of life and liberty, to admit the conflicting statements, and to refuse to permit such impeaching testimony to be introduced. It is for the court to determine the competency of the impeaching evidence, and for the jury to pass on its credibility."

1 Wharton on Cr. Ev. § 298, p. 580.

The many cases announcing the rule and . which, without exception, declare such to be the law, are to be found in the notes appended to Liddell v. State, 16 A. L. R. 405. See, also, 1 Elliott on Evidence, p. 457, § 346; 21 Cyc. 993; State v. O'Shea, 57 Pac. 970; Commonwealth v. Cooper, 5 Allen (Mass.) 495, 81 Am. Dec. 762; State v. Baldwin, 15 Wash. 15, 45 Pac. 650.

[2] Appellant next complains of paragraph 26 of the court's instructions to the jury, which deals with the subject of dying declarations and is in the following language:

"You are instructed that in prosecutions for murder or homicide, the dying statements or declarations of the person with whose murder the accused stands charged, when material, and made under the sense of impending death, when every hope of the world is gone, are admissible in evidence. The declarations of Lucas Cruz, if such there were, offered in evidence by the state, through certain witnesses, were admitted by the court under this rule of law; but the truth or falsity of such declarations, if you find the same were made by said Lucas Cruz, and the degree of accuracy or inaccuracy

in the recital thereof by the various witnesses, are matters for you to weigh under the same tests as apply to other witnesses. It is for you to say what dying declarations, if any, are established by the testimony, and it is for you to give them the weight which you think they should have, when considered in connection with all the other facts and circumstances in evidence."

To this exceptions were taken upon numerous grounds, among them being that it permitted the jury to consider such dying declaration the same as statements by other witnesses who appeared upon the stand, and that it failed to advise or inform the jury that they were not entitled to the same weight and consideration as those of other witnesses; that they were not entitled to receive the same weight and credit as witnesses who appeared upon the witness stand and were subjected to cross-examination by the appellant's counsel. We think the exception with regard to such instruction leaving the jury to consider such evidence the same as statements made by having living witnesses upon the stand was well taken, and that the court erred in the giving thereof over such exception. The great weight of authority is that such evidence is secondary, one of the exceptions to the hearsay rule; it deprives the defendant of the right of cross-examination which is conceded to be one of the sharp blades in the wage of battle in such cases; it lurks and is ladened with many of the infirmities of hearsay evidence, and the same is not entitled to the same weight and credit as evidence submitted by living witnesses who appear and personally testify, who are viewed by the jury, and are subjected to cross-examination. There is the additional element to be considered by the jury, that of the mental condition of the deceased at the time such declarations were made; that is to say, whether, by reason of his weakened condition and his near approach to death, he had so far lost such mental faculties that he was unable to accurately detail the matters and things which he undertook to do, as well as his feelings with regard to his adversary, viz. whether he entertained toward such adversary enmity, malice, revenge, hatred, ill will, and hostility which might in-

fluence him, and this must be coupled with the further fact that the persons who detail upon the witness stand such dying declarations are usually friends of the declarant, gathered about his bedside during his last hours, who are eager to catch everything which he says and are to such extent biased. All these are matters which render such evidence by reason of its weakened force of a different and less value than other evidence which is submitted in the case, and hence it is erroneous to positively instruct or to lead the jury to believe that such evidence is entitled to the same weight as evidence given under oath by living witnesses. The vice which we see in this instruction lies in the fact that the court tells the jury that the truth or falsity of such declarations, if made, are matters for the jury to determine "under the same tests as apply to other witnesses." So far as it applies to the degree of accuracy or inaccuracy in the recital of such declarations by the witnesses who appear before the jury and are subjected to cross-examination, the rule is correctly stated; but the error lies in coupling therewith the duty of the jury to determine the truth or falsity of such declarations "by the same tests as apply to other witnesses." In other words, it tends to place the declarant, who is the deceased, before the jury with equal standing as other witnesses, and tends to advise the jury that they should apply the same tests to him as to other witnesses. This error is accentuated by the further fact that elsewhere the court gave the usual instruction that the jury in determining the credibility of the several witnesses should take into consideration their demeanor while testifying, and their apparent carefulness and fairness while on the witness stand. Manifestly, these tests could not apply to the deceased, who did not appear on such stand, and and yet, in the instruction complained of, the same tests, without any exceptions, are directed to be applied.

[3] An instruction almost identical with the one here under consideration seems to have been given in State v. Valencia, 19 N. M. 113, 140 Pac. 1119, 52 L. R.

A. (N. S.) 152; but the complaint here urged was not presented nor decided by the court. In that case, however, the court held it to be error to instruct that such evidence was of no more weight than if the deceased were present and testifying, and that it tended to inform the jury that such evidence was entitled to the same as if the witness was personally present; the many infirmities involved in this character of evidence were suggested, and held that such evidence was not entitled to the same weight and credit as evidence of living witnesses. In this connection, see Wharton on Homicide, § 276; 1 Elliott on Evidence, p. 471 § 358. We think the instruction here given strongly tended to lead the jury to believe that such evidence was entitled to the same weight and credit as that of living witnesses. It singled out this evidence and told the jury it should be considered by them "under the same tests that apply to other witnesses."

In some jurisdictions it is held that dying declarations are to be received with the same degree of credit to which the testimony of the declarant would have been entitled if he had been examined under oath upon the witness stand; in others, a less liberal rule obtains, and it is held that no greater weight should be given such testimony than would be given to sworn testimony when no opportunity for cross-examination is afforded, while the prevailing rule is that a dying declaration is equivalent, so far as determining its admissibility is concerned, to a statement made under oath, yet an instruction that it is entitled to the same credit as if sworn to upon oath should not be given, as the function of determining the admissibility of such statement in evidence is for the court, while that of determining its weight and credit is exclusively for the jury. A review of these cases would merely unnecessarily lengthen this opinion. They may be found in the note to People v. Warren, Ann. Cas. 1914C, 219.

[4] The next error assigned concerns the refusal

of the court to give the jury appellant's requested
instructions numbered 6, 7, 8, 9, 10 and 11, each of
which, in different forms, advised the jury that on
account of such dying · declarations involving the in-
firmities hereinbefore referred to, they were not entitl-
ed to the same weight or credence as the testimony of
living witnesses who testified in person. The court
was correct in refusing these instructions. To give
them would have constituted a comment on the weight
of the evidence and hence have invaded the province
of the jury. As we have heretofore said, the court
should determine the admissibility of such evidence
and the jury determine its weight or credence. State
v. Pearce, 56 Minn. 226, 57 N. W. 652, 1065; State v.
Reed, 137 Mo. 125, 38 S. W. 574; State v. Dipley, 242
Mo. 461, 147 S. W. 111; People v. Dallen, 21 Cal. App.
770, 132 Pac. 1064.

In State v. Pearce, supra, it is said:

"These dying declarations, when introduced on the trial,
did not contain any evidence of the cross-examination of the
deceased, and this fact was patent to the jury, and they were
at liberty to give such declarations their due consideration.
Whether they should be given the same credit as would have
been given to them if she had testified as a witness under
oath upon the stand was a question for the jury, and not for
the court. If the instruction had been given as requested the
court, in some degree at least, would have been assuming
the province of the jury—a proceeding which should not be
permitted, but should be strongly guarded against."

And in State v. Dipley, 242 Mo.. 461, 147 S. W. 111,
supra, the court says:

"Defendants requested the court to instruct the jury upon
certain questions of law, including the law upon dying declar-
ations, and they now complain that the court failed to instruct
upon the subject of such testimony.

"This court has held it error to instruct that a dying dec-
laration is entitled to the same credibility as if the declarant
had been examined under oath as a witness and testified
in court to the same facts. State v. McCanon, 51 Mo. 160;
State v. Vansant, 80 Mo. 67. On the other hand, it was held in
the case of State v. Reed, 137 Mo. 125, 38 S. W. 574, that the
court did not err in refusing an instruction asked by the de-
fendant telling the jury that such declarations were not en-

titled to the same weight as the testimony of the declarant, were he a witness testifying in court. It was further held in the Reed Case that such an instruction would have been objectional as a comment upon the evidence. Under these authorities, the court properly refused to give the instruction requested."

The infirmities involved in this character of evidence are matters for argument of counsel rather than instructions of the court.

Appellant complains of the refusal of the trial court to permit the witnesses Felipe Arrellano, Jose Isa Lopez, and Jose Lucero to testify concerning the bad reputation of the deceased with regard to being a quarrelsome and dangerous man. Neither of such witnesses ever stated that they were acquainted generally with the people in the community in which the deceased lived, and the time inquired about in the interrogatories propounded was not confined or limited to dates or time prior to the homicide, and the court was correct in expressly holding that the proper foundation had not been laid for such evidence, as both are necessary elements to the admission of such testimony.

Errors are assigned with respect to the refusal of the court to quash the jury panel and requiring the appellant to close without giving him opportunity to obtain the presence of a material witness who had left the court without permission; but as these may be obviated upon another trial, it is unnecessary to discuss them.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for a new trial, and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.