8 P.(2d) 443

### STATE v. WRIGHT.
No. 3654.

Supreme Court of New Mexico.
Feb. 12, 1932.

See, also, 34 N. M. 422, 283 P. 53.

O. O. Askren, of Roswell, and Caswell S. Neal, of Carlsbad, for appellant.

E. K. Newmann, Atty. Gen., for the State.

SADLER, J.

The appellant, convicted of voluntary manslaughter, complains on appeal of the giving by the trial court of the following instruction touching dying declarations, to wit: "You are instructed that in prosecutions for murder or homicide, the dying statements or declarations of the person with whose murder the accused stands charged, when material, and made under the sense of impend-

ing death, are admissible in evidence. *Such declaration is made when the party making it is at the point of death, and when every hope of the world is gone, and when every motive for falsehood is silenced, and the mind is induced by the most powerful consideration to speak the truth; the situation in law is considered as creating an obligation equal-to that which is imposed by an oath administered in a court of justice.* The declarations of Andrew Jackson Foster, if such they were, offered in evidence by the State, through certain witnesses, were admitted by the Court under this rule of law, but the truth or falsity of such declarations, if you find the same were made by said Andrew Jackson Foster, and the degree of accuracy or inaccuracy in the recital thereof by the various witnesses, are matters for you to weigh. It is for you to say what dying declarations, if any, are established by the testimony, and it is for you to give them the weight which you think they should have when considered in connection with all the other facts and circumstances in evidence."

It is insisted that in giving to the jury so much of the foregoing instruction as we have italicized for purpose of easy reference, the trial court made a comment on the weight of the evidence. It was duly excepted to by appellant upon that ground, among others, and it is one of the grounds here relied upon for procuring a reversal and the award of a new trial.

We hold that the court was in error in retaining this language in the instruction over appellant's objection. State v. Long (Wash.) 1 P.(2d) 844, 846; Commonwealth v. Gardner, 282 Pa. 458, 128 A. 87; State v. Scott, 37 Nev. 412, 142 P. 1053; State v. Dipley, 242 Mo. 461, 147 S. W. 111; People v. Warren, 259 Ill. 213, 102 N. E. 201, Ann. Cas. 1914C, 219, and case note.

This identical language occurs in the instructions in State v. Valencia, 19 N. M. 113, 140 P. 1119, 52 L. R. A. (N. S.) 152. The reversal in that case resulted from the court having charged the jury in effect that the dying declaration was entitled to as much weight as if the deceased were present and testifying. The opinion does not take notice of the language here complained of present in the instructions in that case. But this is by no means to be taken as an approval of same. Indeed, we are unable to see wherein such language can escape the criticism aimed at the use of the very language responsible for the reversal of the Valencia Case.

While it is true the court, in using this language, was only stating the theory upon which dying declarations are held admissible in evidence, nevertheless the considerations mentioned in the instructions as supporting such theory when stated by the court under the solemnity usually accompanying the charging of a jury, are calculated to give this class of evidence, admittedly secondary in character, an undue prominence in view of the infirmities to which it is subject. These infirmities are discussed by Mr. Justice Bratton in State v. Gallegos, 28 N. M. 403, 213 P. 1030. What he there said as to such in-

firmities being more properly a matter for argument to the jury than for mention by the court in instructions, applies with equal force to laudatory remarks by the court on the virtues of such evidence. It is a proper subject of argument but dangerous to be included in the charge, for it may constitute, as here, a comment on the weight of the evidence. In State v. Gallegos, supra, the trial court very properly deleted this objectionable language from its instructions, though reversal resulted from error in another paragraph of its charge touching dying declarations.

In a very recent case, State v. Long, supra, the Supreme Court of Washington held the giving of this same instruction erroneous as a comment on the weight of the evidence by reason of the presence in it of the language here assailed. The court said:

"We think this instruction is erroneous because it is a comment on the weight of the evidence, because it tells the jury that every motive for falsehood is silenced, and because it places such evidence on a parity with, if not above, the testimony of other witnesses produced in person, placed under oath and subjected to cross-examination. * * *

"That portion of the instruction which says, 'Such declarations are made when the party making them is at the point of death, and when every hope of the world is gone, and when every motive for falsehood is silenced, * * *' is particularly unfortunate. Even under such circumstances, the victim may be fired by a spirit of revenge, or, as may have been the case here, have had the strongest possible reasons for leaving an untarnished reputation in the eyes of the world, so that her innocent children might maintain their belief in, and their respect for, the memory of a virtuous mother. The purpose and intent of the declarant (and of every other witness) is peculiarly a question for the jury."

The cases of Josey v. State, 137 Ga. 769, 74 S. E. 282, and Strickland v. State, 167 Ga. 452, 145 S. E. 879, holding not improper the use in an instruction of language hardly so strong as that in the case at bar in assigning to the jury the reason for the admissibility of this class of evidence, would seem to lend some support to the position of the Attorney General on this question. But they do not accord with our view of what constitutes a comment on the weight of the evidence. However, in one of those cases, Josey v. State, supra, the court, apparently in order to discourage a practice which did not have its wholehearted approval, felt constrained to suggest the want of purpose or necessity for including in the instructions the language criticized.

■ The appellant also complains of the court's refusal of his specially requested instruction No. 3, cautioning the jury on the infirmities of dying declarations as evidence. His counsel concede that but for the error complained of in the instruction given of the court's own motion, he would not have been entitled to the requested instruction. Having held that the court's instruction was erroneous in the particular complained of, as con-

stituting a comment on the weight of the evidence, it is easy to see that the same vice inheres in the requested instruction. The one comments on the strength of a dying declaration, the other its weakness. Another reason, however, renders proper the court's refusal of this requested instruction. It informed the jury that before the dying declarations could be considered, they must believe beyond a reasonable doubt "that they were made by deceased under a sense of impending death and when all hope of life had gone from him."

■ While there is a minority view which supports this statement of the law, the decided weight of authority is to the contrary. Under the majority view which we favor, whether the tendered declaration was made under the sense of impending death is a preliminary matter to be determined by the court. Having so determined, the declaration is admissible, and it is not properly within the jury's province to overrule the court and say it was not so made. 3 Wigmore on Evidence (2d Ed.) § 1451; Wharton's Criminal Evidence (10th Ed.) § 296b, p. 577; 4 Encyc. of Evidence, 948; 2 Jones' Com. on Evi. § 332, p. 774; Case Notes, 56 L. R. A. 434; 16 L. R. A. (N. S.) 660. Once admitted, it is for the jury to appraise the same. It will determine the truth or falsity of the claim that the tendered declaration was in fact made, the accuracy or inaccuracy, good faith or imposition in the witness' recital of it, and generally pass upon the weight to which it is entitled. Gurley v. State, 101 Miss. 190, 57 So. 565.

■ Another error is assigned by appellant. Did the court erroneously admit testimony of a custom among cattle men in the handling of another's cattle straying on the premises of an adjoining rancher? In order to make this point clear it should be stated that the difficulty out of which the homicide arose occurred when the deceased in response to a message from appellant had called at the latter's corral to return to its own pasture a stray yearling which had been there impounded. It was evidently the state's theory that the impounding of the animal was a mere pretext employed by appellant to secure the presence of the deceased on the former's premises in order to provoke a difficulty over two bulls which were missing from his pasture, and which he suspected the deceased of having in his possession.

Testimony of an experienced rancher was introduced over appellant's objection of a custom among cattle men not to impound a stray under the conditions shown, but instead to permit the animal to graze on the premises onto which it had strayed until convenient to round up, when some one representing the owner would be present to take home the stray, or "quite often the man who owns the pasture where the cow strays in would work her over into the pasture she belongs in."

We presume the theory on which the state offered this evidence was to characterize appellant's act in sending for the deceased, as bearing upon the question of intent and motive. It seems to us to have had relevancy

for this purpose. The test of relevancy, particularly where such matters must be determined circumstantially, is rather broad. 1 Jones, Commentaries on Evidence, § 173, pp. 183 and 197; 1 Wigmore on Evidence (2d Ed.) §§ 31, 32, 38; Holmes v. Goldsmith, 147 U. S. 164, 13 S. Ct. 288, 37 L. Ed. 123; Williamson v. United States, 207 U. S. 425, 451, 28 S. Ct. 163, 52 L. Ed. 278, 292.

"As has frequently been said, great latitude is allowed in the reception of circumstantial evidence, the aid of which is constantly required, and, therefore, where direct evidence of the fact is wanting, the more the jury can see of the surrounding facts and circumstances, the more correct their judgment is likely to be. * * *

"Evidence may seem not to bear immediately and directly upon the contested matters of fact in the cause, yet it may serve to illustrate the conduct of a party by throwing light upon the motives by which he may have been prompted; and where this is a material inquiry, if the evidence tend to do this in any degree, it ought not to be rejected, although the court may think it not entitled to great weight with the jury." 1 Jones, Com. on Evi. § 173.

■ The appellant also complains of the misconduct of the assistant district attorney in telling the jury in argument that the state's chief witness had related to him the day following the homicide the facts testified to on the stand. These remarks were upon objection by appellant withdrawn from the consideration of the jury. Later the act complained of was repeated by the same attorney in telling the jury that this witness had testified to the same facts at the preliminary. Upon objection and motion of appellant these remarks likewise were withdrawn from the jury. Control over matters such as this rests largely within the discretion of the trial court. It granted both motions urged by appellant and withdrew the objectionable remarks from the jury's consideration. The fact that the court did not go further of its own motion and rebuke the offending attorney does not give appellant grounds for complaint. Territory v. Torres, 16 N. M. 615, 121 P. 27; State v. Parker, 34 N. M. 486, 285 P. 490.

The judgment of the lower court will accordingly be reversed, and the cause remanded with direction to the lower court to award the appellant a new trial. It is so ordered.

WATSON and HUDSPETH, JJ., concur.

BICKLEY, C. J., and PARKER, J., did not participate.